A00A0670. MASON v. THE STATE.
(535 SE2d 497)

</div>

JOHNSON, Chief Judge.

Charles Mason was indicted for rape, child molestation and two counts of aggravated child molestation. He pled not guilty to the charges and proceeded to trial before a jury. After hearing more than two days of evidence and argument, the jury began deliberating on a Wednesday afternoon. The jurors had deliberated for approximately an hour on Wednesday, all day on Thursday, and for more than two hours on Friday when the court gave them an *Allen*[1] charge, urging them to reach a unanimous verdict.

Sometime after the *Allen* charge, one of the jurors sent a note to the judge stating that she was the lone holdout vote, that it would be difficult for her to deliberate through the weekend because she needed to get back to her business, and that if she were required to deliberate longer, she might change her vote to go along with the majority. Upon receiving the note, the judge did not immediately notify Mason and his counsel about it, but instead wrote a reply note instructing the juror to continue deliberating. The judge later told the defense about the notes, whereupon Mason's attorney moved for a mistrial because the jury was deadlocked. The judge did not grant the motion, but instead decided to question the juror.

The court called the entire jury into the courtroom, identified the juror who had written the note, and then questioned her about the note.[2] During the judge's questioning, the juror indicated that she

---

[1] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

[2] The state claims in its brief that the judge sent the other 11 jurors back to the jury room before he questioned the juror who had sent the note. While that may be what happened, we note that it is not apparent from the transcript that the judge actually sent the other jurors back to the jury room. On the contrary, it appears from the transcript that the

was the only one voting not guilty, that she could continue deliberating that evening, but that she did not want to deliberate longer because of her business. After the questioning, the judge allowed the jury to continue deliberating. Mason's counsel moved again for a mistrial on the ground that the jury was unable to reach a unanimous verdict, and the court denied the motion.

The holdout juror later left the jury room and sat by herself in the courtroom. Although the record is not clear, at some point after that, presumably, the jury foreman sent a note to the judge claiming that the holdout juror had abandoned the other jurors and asking that she be replaced by the alternate juror. Again, the judge did not inform Mason and his attorney about the note. Instead, the judge called the holdout juror into the courtroom and questioned her in the presence of Mason, his counsel, and the state.

Among other things, the judge asked the holdout juror if she was unwilling to deliberate further, and she said, "Yes, sir." But upon further questioning by Mason's counsel, the juror testified that she had given her best effort to reach a verdict, had listened to the other jurors' opinions, and had honestly tried to reach the truth. She also explained that she did not want to deliberate further because she needed to get back to her business and she did not believe that her opinion about the case would change.

After the juror's statements to the court, the judge dismissed her from the jury. Mason's attorney objected to the removal of the juror and renewed the motion for a mistrial because the jury could not reach a verdict. The court again denied the motion.

The judge then called the jury foreman into the courtroom and questioned him about the jury deliberations and about the dismissed juror. During the questioning, the defense learned for the first time that the court had received the note from the foreman asking that the holdout juror be replaced. Defense counsel once more moved unsuccessfully for a mistrial.

The court informed the 11 remaining jurors that the holdout juror had been excused and that she would be replaced by the alternate juror. The judge then sent the remaining jurors home for the weekend. The 11 jurors and the alternate returned on Monday. After deliberating for less than three hours, the reconstituted jury returned its guilty verdict on all counts.

Mason appeals, asserting several enumerations of error, including his claim that the court erred in dismissing the juror rather than declaring a mistrial because the jury was unable to reach a unani-

---

entire jury was in the courtroom during the questioning. Nevertheless, whether the other jurors were present for the questioning is not a dispositive issue in this case.

mous verdict. We agree that it was error to dismiss the juror rather than declaring a mistrial. Therefore, we reverse Mason's convictions and remand the case for a new trial.

1. A trial court has the discretion to decide if a juror has become incapacitated and must be replaced by an alternate juror.[3]

> If at any time, whether before or after final submission of the case to a jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated.[4]

In this case, the trial court abused its discretion in finding that the holdout juror was incapacitated and in replacing her with the alternate juror. There was no showing that the juror was unable to fulfill her duties, and no other legal cause for dismissal was shown. While the juror clearly was concerned about getting back to her business, such concern does not amount to a legal cause for dismissal.

In the context of all her statements to the court and the posture of the proceedings, the juror's statements that she did not want to deliberate further and would not change her vote did not amount to a refusal to deliberate. The juror made those statements only after she and the other jurors had already deliberated for more than two days and after the court had given the jury an *Allen* charge. Contrary to the trial court's ruling, the juror did not fail to deliberate, but instead had reached her decision after having fully deliberated for more than two days.

The state claims that *Cloud v. State*[5] is similar to the instant case and supports the trial court's replacement of the juror. The state's reliance on that case is misplaced. In *Cloud*, this court found that the trial court properly replaced a juror because of his inability to judge the defendant.[6] Unlike that juror, the juror in the instant case was not unable to judge, or reach an opinion about, the charges against Mason. On the contrary, the juror here unequivocally told the court that she had fully deliberated the matter and had reached her conclusion that Mason was not guilty.

The fact that the juror reached a conclusion different from that of the other jurors did not render the juror incapacitated. Rather than being faced with a juror unable or unwilling to perform her

---

[3] *Stokes v. State*, 204 Ga. App. 141 (1) (418 SE2d 419) (1992).

[4] OCGA § 15-12-172.

[5] 235 Ga. App. 721-722 (1) (510 SE2d 370) (1998).

[6] Id. at 722 (1).

duties, the court was faced with a jury that was deadlocked after lengthy deliberations. Under those circumstances, the court erred in replacing the lone juror voting in favor of Mason with the alternate juror. "Alternate jurors do not serve to substitute for minority jurors who cannot agree with the majority."[7]

The court should not have discharged the juror but should have granted Mason's repeated motions for a mistrial on the ground that the jury was deadlocked. Because the court erred in denying the motions and in replacing the juror, we hold that Mason's convictions must be reversed and that he is entitled to a new trial.[8]

2. Because of our holding in Division 1, we need not address Mason's remaining enumerations of error.

*Judgment reversed and case remanded. Phipps, J., and McMurray, Senior Appellate Judge, concur.*

### On Motion for Reconsideration.

The state filed a motion for reconsideration, claiming that we misunderstood the facts of the case when we wrote that the holdout juror *might* change her vote to go along with the majority if she were required to deliberate through the weekend. The state contends that the juror unequivocally stated that she *would* change her vote if she had to deliberate further. In support of its contention, the state cites the trial judge's recollection that the juror wrote in her note, "I am an independent employer and I have lost too much money during this trial and for economic reasons I *will* vote with the majority." While the judge did make this statement about the note, he failed to preserve the actual note in the record. He did, however, question the juror on the record and allowed the defense attorney to question her. It is that evidence in the record, not the missing note, which provides the basis for our understanding of the juror's position.

During his questioning, the judge told the juror that in her note she had said that she would change her vote rather than deliberate further. The juror replied: "I say I don't want to feel that I would have to, to say — you know what I'm saying? I don't want a toss-up between my job and this and I would never want to say something that I don't feel. I don't know if I'm saying that right." The judge again told the juror that her note said she would change her vote. And the juror testified: "I don't want to do that. I don't want to have to be stuck in a position where I would have to say something that I don't feel to get out of something, in other words. I wouldn't do that —"

Later, during questioning by the defense attorney, the juror tes-

---

[7] (Citation and punctuation omitted.) *Stokes*, supra at 142 (1).
[8] See *Scott v. State*, 219 Ga. App. 798, 800 (2) (466 SE2d 678) (1996).

tified that she had given her best effort to reach a verdict in the case, had listened to the other jurors' opinions, and had honestly tried to reach the truth and that her not guilty vote would not change with further deliberations. The judge intervened and asked the juror whether she would participate in deliberations if he asked her to come back the following day or the following week. And the juror stated: "I [am] telling you that I don't feel any different — what I feel as far as the verdict is the same if I come back here Monday, Tuesday, Wednesday, Thursday and Friday. At this point I feel no different." The judge then dismissed her from the jury.

After a review of all her testimony, we do not find, as the state suggests, that the juror unequivocally told the court that she would change her vote if the court ordered her to return the next week to continue deliberations. Rather, she equivocated on that issue. She clearly had a firm opinion that Mason was not guilty and she clearly did not want to return the following week to deliberate, but she did not definitively say that she would change her vote if ordered to return for deliberations. At most, she indicated that she did not want to be put in a position where she would have to choose between voting her true opinion on the case and changing her vote to go along with the majority in order to get back to her job. In other words, she indicated that she might change her vote if put in such a position.

Moreover, even if we assume that the juror did state in her note that she would change her vote if she had to deliberate longer, such a statement does not change our opinion that the judge should have declared a mistrial instead of dismissing the lone juror voting not guilty. On the contrary, such a statement simply reinforces the fact that the jury was hung and that the judge should have granted Mason's motion for a mistrial.

*Motion for reconsideration denied.*

DECIDED MAY 9, 2000 —
RECONSIDERATION DENIED MAY 31, 2000

*William R. Gignilliat III,* for appellant.
*J. Tom Morgan, District Attorney, Robert M. Coker, Charles C. Flinn, Assistant District Attorneys,* for appellee.