**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 26, 2016**

# In the Court of Appeals of Georgia

A16A0377. BETHEA v. THE STATE.                                    DO-013 C

DOYLE, Chief Judge.

Following a jury trial, Anthony Bethea was convicted of voluntary manslaughter[1] and concealing the death of another.[2] He appeals from the denial of his motion for new trial, contending that the trial court erred by excusing a juror for cause after deliberations began. For the reasons that follow, we affirm.

Construed in favor of the verdict,[3] the record shows that Bethea got into a drunken altercation with his roommate, Darrell Bailey, after a night out. The altercation ended when Bethea grabbed Bailey in a choke hold that caused Bailey to

---

[1] OCGA § 16-5-2 (a).

[2] OCGA § 16-10-31.

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

die. When Bailey did not revive from the choke hold, Bethea dragged his body to the woods, where it was discovered a few weeks later due to the strong odor of decomposition.

Bethea was charged with murder, felony murder, aggravated assault, and concealing the death of another. He testified at trial, making a self-defense argument. After the close of the evidence and the trial court's instructions, the jury retreated to the jury room to deliberate at 4:17 p.m. The jury later asked the court a question, seeking clarification as to the use of hands as deadly weapons, which the trial court answered in writing with consent of both counsel. By 6:15 p.m., the jury was still deliberating, so the trial court adjourned for the day and reconvened proceedings the next day at 10:00 a.m.

The next morning, the courtroom deputy reported that when he opened the door to the jury room, a juror stated: "[S]he wants out, she can no longer be a part of this, bring an alternate in, she wants out." With the consent of the parties, the court brought in the juror to inquire as to the circumstances.

The trial court first instructed the juror not to indicate her view on the verdict nor the view of any other jurors. The juror agreed and explained that one or two other

people agreed with her, but she believed they "would be still in that room all week." The trial court explained that they had only deliberated for two hours, and they needed to take more time to deliberate. The juror replied that she tried to complete the deliberation process, "but I just feel like I don't want to be a part of it." The trial court again explained the jury's responsibility to examine the evidence and deliberate and asked if the juror could talk to the other jurors and try and reach a verdict. The juror responded, "Yes, ma'am, I can do that. We have to have one verdict. And if they keep what they going on and on[sic], ain't nobody coming together. . . but I'm not going to be forced to go along with what they were saying just to put a verdict on the table. I can't do that."

During the conversation, the juror appeared to be upset and crying, and the trial court attempted to calm her. As the trial court spoke, the juror repeatedly interrupted the court. The juror expressed her opinion that she was "very static about the case . . . I'm solid about the case." The trial court asked if she would be able to listen to the other jurors in their deliberations, and the juror responded that "I listened to everybody's opinion[,] and that's what brought me to this point. They are set with staying with their opinion and not hearing . . . I'm not going to be swayed into go[ing] that route. I know that." The court again reminded the juror of the short amount of

time they had been deliberating and asked the juror if she could listen to the other jurors and "try to deliberate and decide the case," and the juror responded that she would "try one more time."

The juror returned to the jury room, and the courtroom deputy recounted that he had heard her say the prior day that she had already made her decision. After hearing from both parties, the court examined case law[4] and explained that "I'm not looking at her saying she's got a different opinion with somebody else... My concern is the way she . . . approached [the deputy] and she was wanting to leave, wasn't wanting to talk to anybody, her mind was made up." The deputy confirmed that the juror said "she was wanting to go." The court also expressed a concern, based on the juror's demeanor and repeated interruptions, that the court did not expect the juror to engage in rational, impartial deliberation with the other jurors. Based on the court's inquiry and argument of counsel, the court excused the juror over Bethea's objection.[5] As the juror was being escorted out of the jury room, the juror stated that the other

---

[4] The trial court cited *Reynolds v. State*, 271 Ga. 174, 175 (2) (517 SE2d 51) (1999), in which the Supreme Court of Georgia affirmed the decision of a trial court to excuse a juror who became aware that he knew several of the defendant's relatives and believed this would impact his decision.

[5] Bethea made no argument about potential racial bias in the jury composition.

jurors were "beginning to do what they're supposed to be doing in there. . . now they're making that decision more where I was – I am." After further deliberation, the jury, with the alternate, returned a verdict of guilty as to voluntary manslaughter as a lesser included offense of felony murder, aggravated assault, and concealing the death of another. The trial court then merged the aggravated assault count with the manslaughter count. Bethea's motion for new trial was denied, giving rise to this appeal.

Bethea argues that the trial court erred by excusing the juror and replacing her with an alternate. We find no basis for reversal.

> OCGA § 15-12-172 provides: "If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated." The trial court must exercise its discretion in removing a juror, and it may effect such a removal even after deliberations have begun. There must be some sound basis upon which the trial judge exercises his discretion to remove the juror. A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process. Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to

5

the proper exercise of judicial discretion. Dismissal of a juror without any factual support or for a legally irrelevant reason is prejudicial.[6]

"[A] trial court has broad discretion to determine whether it is appropriate to remove a juror,"[7] and such a ruling is reviewed for an abuse of the court's discretion.[8]

Here, the trial court's main concern was that the juror was visibly upset and had reached a fixed and definite opinion so soon after the deliberation began without fully vetting the evidence with the other jurors. The juror had expressed that her mind was made up, she "wanted to go," and she could "no longer be a part of this." "Legal cause [for excusing a juror] arises when the court determines, in its sound discretion, that the juror holds an opinion so fixed and definite that he or she cannot lay it aside and decide the case on the evidence presented and the court's charge."[9] Although the juror did equivocate about her ability to deliberate, there was evidence that she had reached an unwavering opinion fewer than two hours into the deliberation. Unlike

---

[6] (Punctuation omitted.) *Butler v. State*, 290 Ga. 412, 417 (5) (721 SE2d 876) (2012).

[7] *Smith v. State*, 298 Ga. 357, 360 (3) (782 SE2d 26) (2016).

[8] See *State v. Clements*, 289 Ga. 640, 645, n. 5 (715 SE2d 59) (2011).

[9] *Ganas v. State*, 245 Ga. App. 645, 648 (3) (537 SE2d 758) (2000).

other cases where, for example, a trial court erred by excusing a lone holdout after more than two days of deliberation,[10] there is evidence showing that, very early on, the juror had ceased deliberating with the other members of the jury and "wanted out" of the process.

> The fact that the juror eventually stated that [s]he could be impartial [and deliberate] does not require the trial court to ignore the numerous times [s]he equivocated or the other [evidence] showing that [s]he expressed a fixed and definite opinion and does not make the trial court's credibility decision to strike [her] error.[11]

Further, the record is clear that, despite excusing the juror, the trial court carefully considered avoiding excusing the juror simply because she might be in the minority or a potential holdout. The trial court voiced her concern that jurors not be removed simply because they were holdouts, saying "the [mere] fact that one juror does not agree with the other [does] not constitute cause for removal." Instead, the court's basis for excusing her was the juror's unwillingness to meaningfully participate in deliberation based on a thorough review of the evidence.

---

[10] See, e.g, *Mason v. State*, 244 Ga. App. 247, 249 (1) (535 SE2d 497) (2000) ("Contrary to the trial court's ruling, the juror did not fail to deliberate, but instead had reached her decision after having fully deliberated for more than two days.").

[11] (Punctuation omitted.) *Butler*, 290 Ga. at 418 (5).

In light of the trial court's inquiry on the record into the juror's mind-set and demeanor, the court's careful consideration of the relevant concerns, and the juror's explicit resistance to deliberation, and the evidence supporting a finding that the juror held a fixed and definite opinion so early in the process, the trial court did not abuse its discretion by excusing the juror.[12] Accordingly, we discern no reversible error.

*Judgment affirmed. Andrews, P. J. and Ray, J., concur.*

---

[12] See *Alford v. State*, 244 Ga. App. 234, 237-238 (534 SE2d 103) (2000), citing *Cloud v. State*, 235 Ga. App. 721, 722 (510 SE2d 370) (1998).