**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**September 10, 2020**

# In the Court of Appeals of Georgia

A20A1096. DELGADO v. THE STATE.

GOBEIL, Judge.

Following a jury trial, Jovani Valle Delgado was convicted of a single count of trafficking methamphetamine, and was sentenced to 30 years with 15 years to serve in confinement and the remainder on probation. Delgado appeals from the trial court's denial of his motion for new trial, arguing that the trial court erred in dismissing a juror after deliberations had begun. Because we find that the trial court erred in denying Delgado's motions for mistrial and instead removing the holdout juror, we reverse.

Pursuant to OCGA § 15-12-172,

> If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal

cause, the first alternate juror shall take the place of the first juror becoming incapacitated. . . .

Georgia courts have established a procedure for addressing the question of removal of a juror for cause:

> The trial court must exercise its discretion in removing a juror, and it may effect such a removal even after deliberations have begun. There must be some sound basis upon which the trial judge exercises his discretion to remove the juror. A sound basis may be one which serves the legally relevant purpose of preserving public respect for the integrity of the judicial process.

*Semega v. State*, 302 Ga. App. 879, 879 (1) (691 SE2d 923) (2010) (punctuation omitted), citing *State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006).

The record in this case shows that Delgado was charged with a single count of trafficking in methamphetamine based on a seconds-long encounter where he sold more than 100 grams of methamphetamine to a confidential informant and an undercover agent for the federal Drug Enforcement Administration. Delgado's trial was brief – the jurors heard approximately four hours of opening statements and testimony from four witnesses in one afternoon. The next morning, the jurors heard

closing arguments and received their charge before beginning their deliberations at 12:57 p.m.

Approximately three and a half hours later, the jury submitted a note that read: "At this point we are 8-4 with 11 of us unwilling to budge on our opinions. I honestly don't see this being resolved this evening or at any point. We are all passionate about our opinions and I simply don't ever see all 12 of us being united." Defense counsel moved for a mistrial, but the trial court instead gave the jurors an *Allen* charge.[1] The jurors resumed deliberating the next morning, and after almost two more hours, they submitted a second note. It read: "We are currently 11-1 count. I don't see the one individual ever changing his stance. The individual is so far off from the rest of us that we could sit here for a week with no outcome."

Defense counsel renewed her motion for a mistrial, arguing that the jury was deadlocked. The trial judge denied this motion, and directed the jurors to continue

---

[1] An *Allen* charge is given by the trial court when the jury in a criminal trial indicates that it is deadlocked, encouraging the jurors to reexamine their opinions in continued deliberations and to attempt to reach a unanimous verdict. See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896). "When a jury is unable to reach a unanimous decision, an *Allen* charge might be appropriate." See *Wells v. State*, 297 Ga. App. 153, 160 (2) (676 SE2d 821) (2009) (citations omitted). "The decision of whether to give a jury in disagreement the 'Allen' charge is generally left in the discretion of the trial judge." *Thornton v. State*, 145 Ga. App. 793, 794 (245 SE2d 22) (1978).

deliberating. The trial judge also gave the jury a written copy of its *Allen* charge, despite defense counsel's repeated objections.

Before breaking for lunch, the jury sent another note, which read:

[T]he one individual is refusing to have any discussions. We are all open and have now put notes on [the] whiteboard. He simply is sitting back refusing to discuss or budge on his stance. He gives no backing to his opinions. As I said before, this is going nowhere. The other three individuals had open minds and changed their opinions when the group shared the facts with everyone. There's nothing of value coming from us being in here.

The trial court then questioned the foreman, the holdout juror, and the remaining ten jurors. The foreman acknowledged that the juror participated at the beginning of deliberations but was now refusing to deliberate further. The foreman stated that the holdout juror had not changed his opinion since the beginning of deliberations, an opinion which was apparently based on the holdout juror's disbelief of a witness.[2] The holdout juror had repeated his opinion the following morning, but now had begun telling the other jurors not to talk to him. The holdout juror also had

---

[2] The trial judge had directed the foreman not to reveal whether the holdout juror's vote was for a guilty or not guilty verdict, so the foreman did not want to reveal too much information in explaining the holdout juror's reasoning.

4

become "aggressive and rude" to the other jurors. The foreman acknowledged that the holdout juror believed that he was being picked on by the other jurors and that the remaining jurors had begun to focus their questions at the holdout juror, as the holdout juror was "holding everything up" for the other jurors.

The trial court then questioned the holdout juror, advising the juror that the court had been informed that he was refusing to participate in jury deliberations. The juror responded:

> They are ganging up on me. They ask me what my thoughts and what - - the way I feel so I was - - they feel like they can do that and I've always said you can have your opinion and I'm sticking with mine. . . . We're still sitting in here talking about the same thing. We're still going over the same thing. I've told you how I feel, you said how you feel, you said you're not going to change, but you keep trying to tell me I need to change and when I got on my phone we was through discussing it and as far as the . . . people talking to me - - they wasn't talking to me, they was talking at me. They was talking to me like I'm a child, and I'm one of the oldest people in there. . . . And that was offensive to me and I told them that.

When asked if he consulted with and considered the views of the other jurors, the holdout juror replied that he had discussions and arrived at his opinion, which was different from the other jurors, and he did not think it made sense to try to sway them.

5

In his opinion, he had complied with the mandates set forth in the *Allen* charge to continue deliberations, but he believed the jurors were just going through the motions.

The trial judge, noting the conflict in testimony between the foreman and the holdout juror, then interviewed the other jurors over the objection of defense counsel. The testimony from the other jurors was mixed, but essentially supported the foreman's testimony that the holdout juror was no longer participating in deliberations. However, their testimonies also supported the fact that the holdout juror had participated in deliberations before the atmosphere in the jury room became more tense. One juror testified that she understood how the holdout juror felt because the remaining jurors disagreed with his opinion, were rude to him when he expressed his opinion, and had isolated him.

After hearing argument from counsel, the trial court dismissed the holdout juror, finding that the holdout juror had "failed and refused to discharge his duties as a juror." The trial court announced to the remaining jurors that the holdout juror was not dismissed based on his vote, and the alternate juror was placed on the jury. Delgado renewed the motion for a mistrial, arguing that the jury had been deadlocked before the lone holdout juror was excused, but the trial court denied the motion. After

deliberating for almost three more hours, the jury returned a guilty verdict the next morning. Delgado filed a motion for new trial, which the trial court denied. This appeal followed.

In his sole enumeration of error, Delgado argues that the trial court erred in denying his motion for mistrial and dismissing the lone holdout juror. We agree.

A trial court's denial of a motion for mistrial "will not be disturbed on appeal unless there has been a manifest abuse of discretion and a mistrial is essential to the preservation of the right to a fair trial." *Ivey v. State*, 284 Ga. App. 232, 233 (644 SE2d 169) (2007). "Alternate jurors do not serve to substitute for minority jurors who cannot agree with the majority." *Stokes v. State*, 204 Ga. App. 141, 142 (1) (418 SE2d 419) (1992) (citation and punctuation omitted). While a trial court has discretion to remove a juror for good cause shown pursuant to OCGA § 15-12-172,

> it must be an informed exercise, since the erroneous replacement of a juror may under certain circumstances deprive a defendant of his valued right to have his trial completed by a particular tribunal, his sixth amendment right to a fair, impartial and representative jury, and his due process rights grounded in the entitlement to procedures mandated by state law.

7

*Semega*, 302 Ga. App. at 881 (1) (citation omitted). "Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion." Id. at 879 (1) (citation omitted).

Here, the trial court clearly conducted the required inquiry into the situation unfolding in the jury room. When an inquiry is conducted, "the court has broad discretion to determine whether it is appropriate to remove a juror." *Ware v. State*, 305 Ga. 457, 462 (3) (826 SE2d 56) (2019) (affirming the dismissal of a juror who asked to be dismissed from jury based on preexisting travel plans and an unexpectedly long trial) (citation and punctuation omitted). And as an appellate court, we will not reverse the court's exercise of its discretion as long as it has a sound legal basis. See *Green v State*, 298 Ga. App. 301, 302 (1) (680 SE2d 156) (2009) (finding a sound legal basis for juror's dismissal because juror lied during voir dire). A sound basis is one that "serve[s] the legally relevant purpose of preserving public respect for the integrity of the judicial process." *Murray v. State*, 276 Ga. 396, 399 (4) (578 SE2d 853) (2003) (citation and punctuation omitted).

However, in the context of removing jurors, we also have noted that "the possibility of harmful error [is] heightened when a jury has begun deliberations or

8

when a jury is deadlocked," both of which were present in Delgado's case. *Semega*, 302 Ga. App. at 881 (1) (citation and punctuation omitted). Further, "a particular danger of harmful error is posed by the removal of a lone holdout juror," because "[s]uch a juror may well have concluded that a reasonable doubt exists as to the defendant's guilt and therefore has not refused to deliberate but has simply refused to engage in additional deliberation after reaching his conclusion." Id. at 882 (1).

Keeping those principles in mind, although we recognize the trial court's efforts to undertake a thorough inquiry, we conclude that the trial court abused its discretion in dismissing the lone holdout juror from Delgado's jury. In *Mason v. State*, the lone holdout juror was dismissed from the jury after testifying "that she had given her best effort to reach a verdict, had listened to the other jurors' opinions, and had honestly tried to reach the truth . . . and she did not believe that her opinion about the case would change." 244 Ga. App. 247, 248 (1) (535 SE2d 497) (2000). The juror in *Mason* refused to participate further in deliberations, going so far as to leave the jury room and wait in the courtroom. Id. at 248 (1). We found that the trial court abused its discretion by excusing the juror as opposed to declaring a mistrial, reasoning that there was no showing "that the juror was unable to fulfill her duties[,]"

9

and the juror "did not fail to deliberate, but instead had reached her decision after having fully deliberated for more than two days." Id. at 249 (1).

As in *Mason*, the testimony of the jurors from Delgado's trial showed that the holdout juror had participated in deliberations for several hours before making up his mind. Compare *Bethea v. State*, 337 Ga. App. 217, 219-220 (786 SE2d 891) (2016) (trial court did not abuse its discretion in dismissing a juror who was visibly upset and had reached a fixed and unwavering opinion after only two hours of deliberation). Indeed, the record shows that the holdout juror deliberated for approximately five hours before disengaging from the deliberations, an amount of time which surpassed the evidence portion of Delgado's trial. See *Thornton*, 145 Ga. App. at 794 (factors for a trial court to consider when deciding if a jury is deadlocked and mistrial be declared include the length and complexity of the trial and the length of time that the jury has deliberated). Significantly, Delgado's holdout juror's differing opinion was based on his belief as to the credibility of a witness, which is undoubtedly an appropriate basis for a juror to reach an opinion on the guilt or innocence of the accused. See *Upshaw v. State*, 221 Ga. App. 655, 656 (472 SE2d 484) (1996) (jurors are "entitled to believe or disbelieve all or any part of the testimony of any witness[,]" and are the "exclusive judges of the credibility of the witnesses") (citation omitted).

10

Thus, we find that Delgado's holdout juror, like the juror in *Mason*, did not fail to fulfill his obligations as a juror, but rather had reached a decision, which was based on his review of the testimony and the witnesses' credibility, after meaningfully deliberating and trying to reach a verdict. The holdout juror testified that he had attempted to deliberate with the other jurors, but believed that they were unwilling to accept his differing opinion and the deliberations were no longer productive. This testimony was supported by several other jurors. That the holdout juror refused to change his opinion after continued deliberations does not provide good cause for dismissal. See *Semega*, 302 Ga. App. at 882 (1) ("[a] holdout juror is not subject to dismissal for failing to acquiesce to the other jurors' conclusions regarding the persuasiveness of the evidence") (citation omitted); *Mason*, 244 Ga. App. at 249 (1) ("The fact that the juror reached a conclusion different from that of the other jurors did not render the juror incapacitated."). And our previous holdings make clear that the holdout juror was not required to continue deliberating in perpetuity once he reached his opinion. *Semega*, 302 Ga. App. at 882 (1). Accordingly, because the trial court did not have sufficient legal cause to remove the holdout juror, we hold that the trial court erred in dismissing the juror as opposed to declaring a mistrial. Thus,

11

Delgado's conviction must be reversed and the case remanded for a new trial. See id. at 250 (1).

*Judgment reversed and case remanded. Barnes, P. J., and Pipkin, J., concur.*