## S11A1827. BUTLER v. THE STATE.

(721 SE2d 876)

CARLEY, Presiding Justice.

After a jury trial, Appellant Willie Bernard Butler, Jr. and his co-defendant Martin Holmes were found guilty of the malice murder and armed robbery of Rickey Gibson, the burglary of Gibson's and Alexis Yates' dwelling house, aggravated assault against their infant son Jordan Yates, the aggravated assault and kidnapping of Ms. Yates, two counts of possession of a firearm during commission of the crimes against Gibson and Ms. Yates, the burglary of Randy Manning's dwelling house, aggravated assault against Greg Pridgen, and hijacking Pridgen's motor vehicle. Holmes was also found guilty of possession of marijuana. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for murder and to various terms of years for the remaining crimes. A motion for new trial was denied, and he appeals.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that Appellant, Holmes, and at least two other young men, all of whom were carrying guns, broke into Gibson's and Ms. Yates' house, demanded money, put a handgun into the baby's mouth, hit Ms. Yates in the head with a gun, and forced her to go outside. Ms. Yates escaped with the baby, and the men shot Gibson multiple times, killing him. A shoe print near the house was consistent with the shoes that Appellant was wearing, and Ms. Yates later identified Holmes as one of the intruders.

Gibson's gold watch was stolen during the home invasion and was left behind about two hours later in Manning's yard after his house was burglarized by Appellant and Holmes. Appellant defecated in the yard and cleaned himself with a bloody sock which tested positive for his DNA. Shortly afterwards, Appellant and Holmes entered Pridgen's car while it was running and he was

---

[*] The crimes occurred on September 24, 2008, and the grand jury returned an indictment on August 5, 2009. The jury found Appellant guilty on October 2, 2009, and, on that same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on October 16, 2009, amended on December 3, 2010 and on March 3, 2011, and denied on May 4, 2011. Appellant filed the notice of appeal on May 27, 2011. The case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

delivering a newspaper. Pridgen fought with Appellant, who punched him several times and stabbed him. Police officers responded quickly and found Appellant and Holmes running down the street. Pridgen identified both of them as the perpetrators of the crimes against him. A search of a vehicle in which two of their co-indictees were riding revealed a bottle of pills belonging to Appellant's mother and a camera with pictures of Appellant and Holmes.

The evidence was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court erred in denying his motion to sever the parties. "In a murder case where the death penalty is not sought, the trial court has broad discretion to grant or deny a motion for severance. [Cits.]" *Herbert v. State*, 288 Ga. 843, 845 (2) (708 SE2d 260) (2011). In exercising that discretion, the trial court must consider the following factors:

> " '(1) Will the number of defendants create confusion as to the law and evidence applicable to each? (2) Is there a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions? (3) Are the defenses of the defendants antagonistic to each other or to each other's rights?' (Cit.)" [Cit.]

*Ward v. State*, 288 Ga. 641, 644 (3) (706 SE2d 430) (2011).

"There were only two defendants here, the law applicable to each defendant was substantially the same, and the evidence at trial showed that [Appellant] and [Holmes] acted together in" committing the jointly indicted crimes. *Herbert v. State*, supra. Appellant argues that the evidence against him, especially as to the murder, was weak in comparison to the evidence against Holmes. "However, it is not enough for the defendant to show that he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger. [Cit.]" *Herbert v. State*, supra. See also *Moon v. State*, 288 Ga. 508, 510 (2) (705 SE2d 649) (2011). Appellant "has not pointed to any evidence admitted at his joint trial that would not have been admitted had his severance motion been granted and had he been tried alone." *Morgan v. Mitchell*, 272 Ga. 134, 137 (1) (527 SE2d 556) (2000). "As to . . . any 'guilt by association,' the trial court instructed the jury . . . that it was not authorized to find a person guilty of a crime who was 'merely associated' with other involved persons. [Cit.]" *Denny v. State*, 28

Ga. 114, 116 (1) (636 SE2d 500) (2006).

> [A]ppellant was being tried under the theory that he was a party to the [crimes] and "there was ample evidence to show that (he) was a party to the crime[s]." [Cit.] Where, as here, there is sufficient evidence of a "common scheme or plan" to commit . . . criminal offense[s], joinder is authorized and severance is not mandatory. [Cit.]

*Willingham v. State*, 265 Ga. 435, 436 (2) (457 SE2d 561) (1995).

Although Appellant also "claims on appeal that severance was warranted because [Holmes'] defense[ ] [was] antagonistic to his, [A]ppellant waived this ground by failing to raise it in the trial court. [Cit.]" *Thorpe v. State*, 285 Ga. 604, 609 (4) (678 SE2d 913) (2009). Moreover, "neither [defendant] attempted to point the blame at the other[, and] . . . 'unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance. (Cits.)' [Cit.]" *Moon v. State*, supra. Although Appellant complains that Holmes neither gave any statement nor testified, Appellant "has made no showing on appeal that [Holmes] could or would have provided exculpatory evidence." *Denny v. State*, supra.

> The defendant must show clearly that a joint trial prejudiced his defense, resulting in a denial of due process. [Cit.] [Appellant] made no such showing. Accordingly, the trial court did not abuse its broad discretion in denying [the] motion for a separate trial.

*Herbert v. State*, supra.

3. Appellant urges that the trial court erred in denying a motion to suppress the pre-trial identification of Appellant by Pridgen during a one-on-one show-up at the police station.

" 'Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible.' " *Scruggs v. State*, 309 Ga. App. 569, 575 (4) (711 SE2d 86) (2011). In *Sherwin v. State*, 234 Ga. 592, 593 (216 SE2d 810) (1975), this Court held that, "[a]lthough as a general rule a police station showup, as opposed to a conventional lineup, is not favored, 'in each case it is necessary to look at the "totality of the circumstances." [Cit.]' [Cit.]" *Matchett v. State*, 190 Ga. App. 227 (2) (378 SE2d 404) (1989). See also *Rogers v. State*, 202 Ga. App. 595 (1) (415 SE2d 49) (1992). A police station show-up may be

> "permissible in aiding a speedy police investigation and because there were possible doubts as to the identification

which needed to be resolved promptly and in order to enhance the accuracy and reliability of identification in order to permit the expeditious relief of innocent subjects. (Cits.)" [Cit.]

*Rogers v. State*, supra at 596 (1).

We generally first determine "whether the identification procedure was impermissibly suggestive. If the answer to that inquiry is negative, we need not consider the second question — whether there was a substantial likelihood of irreparable misidentification. [Cits.]" *Azizi v. State*, 270 Ga. 709, 713 (5) (512 SE2d 622) (1999). Conversely, we may immediately proceed to the second question and, if the answer thereto is negative, we may entirely pretermit the first question.

Here, even assuming without deciding that the circumstances surrounding [Appellant's] identification rendered the showup impermissibly suggestive, the evidence is inadmissible only if under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. [Cit.]

*Frazier v. State*, 305 Ga. App. 274, 278 (3) (699 SE2d 747) (2010). See also *Lee v. State*, 298 Ga. App. 630, 631 (1) (680 SE2d 643) (2009).

In that regard, Appellant properly concedes that Pridgen had opportunity to view his attacker's face and focused his attention thereon. See *Tiggs v. State*, 287 Ga. App. 291, 292 (a) (651 SE2d 209) (2007). Although Appellant asserts that portions of Pridgen's prior description of the attacker were inaccurate and incomplete, the existence of some inconsistencies did not render Pridgen's testimony inadmissible, but rather is a matter for the jury.

"As identity is a question for the trier of fact, the credibility of the witness making such identification is not to be decided by this Court where a witness identifies a defendant. Instead, the witness's credibility as well as the weight given his testimony on the perpetrator's identity were issues for the jury." [Cit.]

*Scruggs v. State*, supra. See also *Lee v. State*, supra.

[Pridgen's] description of the [attacker] was fairly accurate. [Again,] [t]he length of time between the crime and the confrontation was less than [one] hour[ ]. The trial court, therefore, was not clearly erroneous in concluding that the

> identification was reliable despite any possible suggestion implied by the officers when they told the victim that they had [caught them]. [Cit.]

*Ford v. State*, 289 Ga. App. 865, 867 (2) (658 SE2d 428) (2008).

4. During direct examination of Appellant's eyewitness identification expert, the trial court asked defense counsel whether a question went to the state of Pridgen's mind and intelligence requiring the witness to judge his credibility, whether after objection to another question the witness had documents and test reports with her for the prosecutor's examination and use in cross-examination, and whether another question regarding the effect of telling a witness that officers have the perpetrator would depend on the individual in light of the court's prior experience with reliable show-ups. Appellant contends that in each of these instances, the trial court violated OCGA § 17-8-57 by making comments regarding the reliability of the expert witness and of one-on-one show-ups.

"Under that statute, it is error for a judge to 'express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused.' " *Creed v. State*, 255 Ga. App. 425, 427 (1) (565 SE2d 480) (2002). However, "[t]he rule set forth in OCGA § 17-8-57 ' " "does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence. (Cits.)' (Cit.)" (Cit.)' [Cits.]" *Paslay v. State*, 285 Ga. 616, 618 (3) (680 SE2d 853) (2009). Furthermore, " 'we have previously determined that "remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence." (Cit.)' [Cit.]" *Linson v. State*, 287 Ga. 881, 884 (2) (700 SE2d 394) (2010). Thus, where, as here, the trial court interrupts defense counsel to make inquiry concerning the admissibility of testimony or the direction which counsel was going with a particular line of questioning, the court's comments do not constitute an opinion as to the proof or the guilt of the accused. *Paslay v. State*, supra; *Creed v. State*, supra. This is especially true here because the trial court promptly gave curative instructions disclaiming any intent by any ruling or comment to express an opinion on the facts of the case, on the credibility of any witness, or on the guilt or innocence of either defendant, stating that the questions in the case should be decided by the jury, and expressing the court's absence of any inclination in the case. *Vandall v. State*, 290 Ga. 36, 37 (2) (717 SE2d 461) (2011); *Buttram v. State*, 280 Ga. 595, 598 (8) (631 SE2d 642) (2006); *Creed v. State*, supra at 428 (1). Furthermore, to the extent that the trial court was directing defense counsel to seek clarification from the witness, such action was consistent with the court's authority to propound clarifying questions in order to develop the truth of a case. *Putman v. State*, 270

Ga. App. 45, 46-47 (4) (606 SE2d 50) (2004). See also *Curry v. State*, 283 Ga. 99, 102 (4) (657 SE2d 218) (2008).

5. Appellant further contends that the trial court erred in removing Juror Number 12 and replacing him with an alternate juror after the State rested even though the prosecutor failed to show prejudice.

> OCGA § 15-12-172 provides: "If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated." The trial court must exercise its discretion in removing a juror, and it may [e]ffect such a removal even after deliberations have begun. [Cit.] "There must be some sound basis upon which the trial judge exercises his discretion to remove the juror." [Cit.] A sound basis may be one which serves "the legally relevant purpose of preserving public respect for the integrity of the judicial process." [Cit.] Where the basis for the juror's incapacity is not certain or obvious, "some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion." [Cit.] Dismissal of a juror without any factual support or for a legally irrelevant reason is prejudicial. [Cit.]

*State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006). The trial court individually questioned the bailiff and all of the jurors. The bailiff stated that Juror 12 emotionally told other jurors over and over again that the jury had no right to take the young defendants' lives in its hands and weigh their lives against the evidence. Two of the jurors stated that on several occasions, Juror 12 expressed his opinion that the defendants are innocent. The jurors also stated that they could still be impartial to both the State and the accused. One of those jurors further indicated that Juror 12 strongly expressed his opinion and took issue with specific evidence which had been offered by the State. Juror 12 himself admitted that he was confused by the evidence, could not see finding the two young defendants guilty of murder, and mentioned this opinion once to one of the jurors. After a considerable number of ambiguous statements, Juror 12 eventually indicated that he could still be fair and impartial to the State and the accused. The trial court, noting that it was resolving a question of credibility, found that Juror 12 had violated the court's instructions not to discuss the case and had already formed an opinion.

" 'On appeal, the question is whether evidence supports the trial

court's determination.' [Cit.] The fact that the juror eventually stated that he could be impartial 'does not require the trial court to ignore the numerous times (he)' '' equivocated or the other jurors' testimony showing that he expressed a fixed and definite opinion " 'and does not make the trial court's credibility decision to strike (him) error.' [Cit.]" *Ganas v. State*, 245 Ga. App. 645, 648 (3) (537 SE2d 758) (2000). The trial court did not abuse its discretion in concluding that the opinion of Juror 12, combined with his violation of the court's instructions by attempting to influence other jurors with that opinion prior to deliberations, constituted "legal cause" for his removal. *McGuire v. State*, 200 Ga. App. 509, 510 (3) (408 SE2d 506) (1991). See also *Johnson v. State*, 288 Ga. 803, 807 (4) (708 SE2d 331) (2011) (juror's refusal to follow instruction not to be concerned with punishment is legal cause); *Krause v. State*, 286 Ga. 745, 748 (3) (691 SE2d 211) (2010) (no abuse of discretion in removing juror who failed to respond accurately about a material issue in voir dire and who violated instructions not to discuss the case with anyone). Appellant "does not contend that the alternate juror who replaced him was not qualified to serve. [Cit.]" *Reynolds v. State*, 271 Ga. 174, 175 (2) (517 SE2d 51) (1999).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012.

*Victor Hawk*, for appellant.

*R. Ashley Wright*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Sara K. Sahni*, Assistant Attorney General, for appellee.