In the Supreme Court of Georgia

Decided:   January 19, 2016

S15A1703. SMITH v. THE STATE.

BLACKWELL, Justice.

Tariq Smith was tried by a Fulton County jury and convicted of murder and several other crimes in connection with the fatal shooting of Emmanuel Opoku-Afari. Smith appeals, contending that the trial court erred when it removed one of the jurors after the evidence was closed. We find no merit in that contention, but we note that the trial court erred when it failed to sentence Smith for attempted armed robbery and the unlawful possession of a firearm by a convicted felon. Accordingly, we affirm in part, vacate in part, and remand for resentencing.[1]

---

[1] Opoku-Afari was killed on October 12, 2010. Along with co-defendants Anthony Norris and Tefflon Rhoden, Smith was indicted on May 22, 2012, and all three men were charged with malice murder, felony murder predicated on both aggravated assault and attempted armed robbery, aggravated assault, attempted armed robbery, and the unlawful possession of a firearm during the commission of a felony. In addition, Smith and Rhoden were charged with the unlawful possession of a firearm by a convicted felon and felony murder predicated on that offense. Norris pled guilty to voluntary manslaughter pursuant to an agreement with the State. Smith and Rhoden were tried together, beginning on April 11, 2013. The jury returned its verdict on April 17, finding Rhoden alone guilty of malice murder

1. Viewed in the light most favorable to the verdict, the evidence shows that, on October 12, 2010, Smith sold a television to Opoku-Afari. During the transaction, Smith noticed that Opoku-Afari seemed to have a lot of money, and he devised a plan to rob him. Later that day, Smith discussed his plan with Anthony Norris and Tefflon Rhoden, who agreed to assist Smith with the robbery. Traveling together in Norris's truck, the three men located Opoku-Afari, and they followed him to his apartment in South Fulton County. But when the three men approached Opoku-Afari with guns, Rhoden apparently became afraid that the victim might "try to do something," and he shot the victim in the head before the robbery could take place. The men fled the scene, but Smith —

and both men guilty on all the remaining counts. Smith was sentenced to imprisonment for life for felony murder predicated on aggravated assault and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The verdicts on the other two counts of felony murder were vacated by operation of law, and the verdict on the aggravated assault merged with the felony murder for which Smith was sentenced. Malcolm v. State, 263 Ga. 369, 371–374 (4), (5) (434 SE2d 479) (1993). As to the verdicts on attempted armed robbery and the unlawful possession of a firearm by a convicted felon, the trial court erroneously determined that they also merged for sentencing purposes. See Division 2, infra. Smith timely filed a motion for new trial on May 2, 2013, and he amended that motion on October 30, 2014. The trial court denied Smith's motion on January 21, 2015, and Smith timely filed a notice of appeal on February 3, 2015. The case was docketed in this Court for the September 2015 term and submitted for decision on the briefs.

who had prior convictions for aggravated assault and drug felonies — was ultimately apprehended by police.

Smith does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Smith was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); Powell v. State, 291 Ga. 743, 744 (1) (733 SE2d 294) (2012) ("[a] person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it") (citations and punctuation omitted). See also OCGA § 16-2-20 (b) (defining parties to a crime).

2. Smith was found guilty of three counts of felony murder, and the trial court properly sentenced him for only one of those counts. The trial court purported to merge the other two felony murders — which were predicated on attempted armed robbery and the unlawful possession of a firearm by a convicted felon — into the felony murder for which Smith was sentenced. But

3

as noted in footnote 1, supra, those felony murders were vacated by operation of law. And because the trial court failed to recognize that those felony murder counts were vacated, it erroneously merged the underlying crimes for those felony murder counts (attempted armed robbery and the unlawful possession of a firearm by a convicted felon) into the vacated felony murders. As a result, the trial court failed to sentence Smith for crimes of which he was found guilty and properly should have been convicted.

This sentencing error has not been raised by the State, and this Court has no duty "to scour the record searching for merger issues." Nazario v. State, 293 Ga. 480, 488 (2) (d) (746 SE2d 109) (2013). But if we notice a merger issue in a direct appeal, as we do here, we may resolve that issue. Id. at 486 (2) (b). Accordingly, we vacate that portion of the trial court's sentencing order in which it merged attempted armed robbery and the unlawful possession of a firearm by a convicted felon into the vacated felony murders, and we remand for sentencing on those counts. See Hulett v. State, 296 Ga. 49, 52-56 (2) (766 SE2d 1) (2014).

3. Smith's sole claim of error concerns the removal of a juror. The juror in question was an insurance agent, and the controversy that led to his removal

4

began during the voir dire of prospective jurors, when Smith's lawyer asked the juror if they knew each other. When the juror said that he did not recognize the lawyer, the lawyer informed him that the lawyer had purchased insurance policies through the juror's insurance agency. The juror thanked the lawyer, who then asked him if the business relationship would affect his ability to "be fair to both sides." The juror responded that it would not, and he ultimately was selected to serve on the jury.

On the fourth day of trial, and after the State's closing arguments, the court informed the parties that the juror at issue had twice approached the courtroom deputy about the business relationship between his insurance agency and Smith's lawyer. According to the deputy, the juror had developed "a concern about being able to vote against a customer of his agency," and he told the deputy that, "while he didn't know [the lawyer,] people in his office did." The parties all agreed that the judge should individually question the juror. When asked about his concerns, the juror responded that he "didn't think it would be fair for me to be on this trial because of the conflict." The juror told the court that he had not discussed the matter with anyone in his office, but he admitted that he had looked up Smith's lawyer in his company's files to "verify"

5

that the lawyer was a customer. The court informed the juror that such conduct violated its instruction not to do any independent research about the parties or their lawyers.

The judge then asked the juror if he could be fair and impartial, and the juror responded that he would "do [his] very best" and that he believed he could. The judge repeated the question, and the juror said he would "try to do [his] very best to be fair and impartial" but added that he was surprised that "the conflict situation came up." The judge asked the juror if he could put the business relationship out of his mind, and the juror responded that he would "do the very best [he could]." And when the judge asked the juror again if he thought he could, in fact, put the relationship out of his mind, the juror responded affirmatively.

The trial court discussed the matter with the parties, and Smith and Rhoden urged the court not to remove the juror. But the court explained that it did not want the juror to serve "if he cannot follow the court's instructions," and that it had "additional concerns about his ability to be fair and impartial in general." The court then removed the juror from the panel and replaced him with the first alternate.

6

Smith acknowledges that a trial court has broad discretion to determine whether it is appropriate to remove a juror. See Gibson v. State, 290 Ga. 6, 10 (5) (717 SE2d 447) (2011); OCGA § 15-12-172. Here, the trial court had two sound reasons for its decision to remove the juror at issue. First, as Smith admits, the juror violated the trial court's instruction not to conduct independent research on the parties,[2] and that violation alone provided a sufficient basis for the court to remove the juror. See Butler v. State, 290 Ga. 412, 418 (5) (721 SE2d 876) (2012); Krause v. State, 286 Ga. 745, 748 (3) (691 SE2d 211) (2010).

In addition, the trial court had another basis for removing the juror, namely, its concern about the impartiality of the juror. The fact that the juror twice approached the deputy with concerns about his business relationship with Smith's lawyer would support a finding that the juror was not, in fact, able to remain impartial. Moreover, the juror's numerous equivocal responses that he

---

[2] Before voir dire, the trial court instructed the potential jurors not to do any type of independent research about the case or the parties, and the court specifically said that this prohibition included doing research on the attorneys. The court repeated a similar warning after the jury was sworn, and it repeated the warning numerous times throughout the trial, including specific warnings not to research the attorneys or "anybody that's affiliated with this case in any way."

would "try" or would "do [his] very best" to put the relationship with Smith's lawyer out of his mind also supported the trial court's conclusion about the juror's ability to be impartial. See Butler, 290 Ga. at 418 (5) ("fact that the juror eventually stated that he could be impartial does not require the trial court to ignore the numerous times he equivocated") (citation and punctuation omitted). See also Sears v. State, 292 Ga. 64, 66 (2) (734 SE2d 345) (2012) ("[a] trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge, unlike appellate judges, can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks") (citation and punctuation omitted).

The trial court had two sound reasons for removing the juror at issue, either of which would have been sufficient to support its decision. As a result, we reject Smith's claim that the trial court abused its discretion.

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.