In the Supreme Court of Georgia

Decided:   September 12, 2016

S16A0799.  STEWART v. THE STATE.
S16A0855.  SNELSON v. THE STATE.
S16A1146. SMITH v. THE STATE.

NAHMIAS, Justice.

Chrissharnard Stewart, Christopher Snelson, and Courtney Smith appeal

their convictions for the felony murder of Eric Smith ("Eric"), the aggravated

assault of Khaljil Smith ("Khaljil"), and the aggravated assault of Sabrina Crary

("Sabrina").  We affirm the three appellants' convictions, but we have identified

a merger error in sentencing that requires vacating their sentences in part and

remanding for resentencing.[1]

---

[1]   The crimes occurred on November 16, 2012.  On July 9, 2014, a Gwinnett County grand
jury indicted Stewart, Snelson, Smith, and Terry York for malice murder, two counts of felony
murder (based on aggravated assault with a deadly weapon and armed robbery), aggravated assault
with a deadly weapon, and armed robbery, all with Eric as the victim; aggravated assault of Khaljil
with a dangerous object by striking him with a firearm; and aggravated assault of Sabrina with a
deadly weapon by brandishing a firearm.  Stewart, Snelson, and Smith were tried together from
August 4 to 13, 2014; York testified against them.  The jury acquitted the appellants of malice
murder but found them guilty of the other charges.

The trial court initially sentenced each of the appellants to life in prison for both of the felony
murder convictions and 20 years for the aggravated assaults of Khaljil and Sabrina, all to run
concurrently; the court merged the guilty verdicts for aggravated assault and armed robbery of Eric
into the corresponding felony murder convictions.  The court later amended the sentences to "merge"
the guilty verdict for felony murder based on armed robbery into the conviction for felony murder
based on aggravated assault.  As discussed in Division 3 below, the trial court erred in failing to

1.    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. According to the two surviving victims, in the days leading up to the crimes, Eric, Khaljil, and Sabrina were staying in Room 161 at the Homestead Suites motel in Gwinnett County, and Eric was selling marijuana out of the room. On the evening of November 14, 2012, Smith and another man approached Khaljil outside the room and asked to buy some marijuana. After agreeing on a quantity and price, Khaljil went into Room 161 to get the marijuana and gave it to the two men, who had waited outside.

The next day, Snelson and a short woman came to Room 161 asking to buy marijuana. After agreeing on the terms, Snelson and the woman left, and Sabrina was later sent to Room 160, which was on the other side of the building, to deliver the marijuana. She saw four people in the room: Snelson, two other men, and a tall woman she later identified as Tiffany Key. Because neither Sabrina nor the buyers had correct change, the buyers ended up owing $5.

---

sentence the appellants on the armed robbery count.

Snelson and Smith filed timely motions for new trial through their trial counsel, which they then amended with new counsel. Stewart filed a timely motion for new trial pro se and twice amended the motion with new counsel. After each appellant had a hearing, the trial court denied all of the motions on July 24, 2015. Stewart, Snelson, and Smith filed timely notices of appeal, and the appeals were all docketed in this Court for the April 2016 term and submitted for decision on the briefs. The three cases have been consolidated for opinion.

Shortly after midnight, Snelson returned to Room 161 and asked to buy more marijuana. Sabrina let him in, they completed their business, and she reminded him that he still owed $5 from the earlier deal. Snelson said he would get the money, left the room, and then returned to the door of the room with a $10 bill. Khaljil took the $10, got a $5 bill from Eric, and held it out to Snelson at the open doorway. Snelson "snatched it" and ran away as two men wearing black masks rushed into the room. One of them hit Khaljil in the head with a gun; Khaljil then slid to the floor. Sabrina saw one intruder "put a gun on" Khaljil before Eric pushed her off the bed she was sitting on and told her to get down; she tried to hide behind the bed, fearing for her life. Eric struggled with the intruders and ran out of the room. The intruders followed and fired three or four shots, hitting Eric, who fell dead outside a room a few doors down. The intruders then returned to Room 161, stole marijuana that was packaged for sale, and ran out.

None of the appellants testified at trial, but their co-indictee Terry York did. According to York, during the days leading up to the crimes, the three appellants, York, Key, Gwenkeitha Gibens, and a man identified only as "Tae" were staying in several rooms at the Homestead Suites, one of which was Room

3

A day or two before the murder, Smith and Stewart told the group that they had found a source for marijuana. Tae arrived at the motel around midnight on the night of the murder, and the group decided to get more marijuana. Tae asked if the seller had a lot of marijuana and indicated that he wanted to buy a large amount. Tae then said that if they could not buy as much as he wanted, they would "just take [it]," and the group discussed robbing the dealer. Stewart then called to arrange another marijuana purchase. York left the room and went downstairs to the parking lot. On his way back, he saw the three appellants and Tae coming down the stairs from their room, saying that they were going to get some marijuana. Tae and Snelson had guns.[2] York saw the four men walk up the other stairs toward the victims' room, and he heard Stewart say that they could not all go to the door because then the drug dealer would not open it. Two or three minutes later, York heard gunshots and then saw his four associates running back down the stairs. They got in two vehicles in the motel parking lot and drove away. York did not go with them.

Gibens also testified. She too said that Tae had a gun, that Tae and the

---

[2] One of York's cellmates testified that York told him that the three appellants, Tae, and York all had guns.

three appellants discussed robbing the marijuana dealer, and that Stewart then called to arrange another marijuana purchase. After she heard the robbery plan, she told Snelson, whom she was dating, not to do it, and she packed up her stuff and waited in a truck with Snelson's brother and Key in the parking lot. Shortly thereafter, Snelson ran to the truck and got in, holding a large amount of marijuana, saying "he shot him," and throwing up. Stewart, Smith, and Tae got in Tae's car, and both vehicles drove to a motel in Marietta, where the group (except York) reconvened. They distributed the marijuana among themselves, and the appellants said that Tae had shot someone.

The police were called to the Homestead Suites at 1:22 a.m. on November 16. They found Eric dead in front of Room 167. An autopsy revealed that he had been shot three times from more than three feet behind him, twice in his back and once in his leg, and he also had a wound on the back of his head that was probably from a bullet ricochet. Three 9mm bullets were recovered from Eric's body, and two 9mm shell casings were found near the body. One .25 caliber shell casing was found in Room 161. Video recordings from the motel's security cameras showed a man wearing a beanie hat walking toward Room 161 right before the shots were fired and then that man and another man wearing

5

black clothes running toward the front of the building; the beanie fell off in the parking lot as they ran. The police recovered a blue beanie in the parking lot. It contained hairs that were matched to Stewart by DNA testing, and Gibens identified Stewart as the man wearing the beanie in the video. Stewart and Smith were located and interviewed by the police. Stewart admitted to being at the Homestead Suites with Key and Gibens, but he claimed not to remember in what month. Smith admitted that he stayed at the motel with Key, Gibens, and Snelson in November 2012. The police were unable to further identify or locate "Tae." The State attempted to secure Key's attendance to testify at trial but was unsuccessful.

2. The appellants raise several challenges to the sufficiency of the evidence to support their convictions. When considering these challenges, we must determine whether the evidence presented at trial and summarized above authorized a rational jury to find the appellants guilty beyond a reasonable doubt of the pertinent charge, either as a principal or a party to the crime. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Giddens v. State, 299 Ga. 109, 111 (786 SE2d 659) (2016); OCGA § 16-2-20 (defining parties to a crime). In this analysis, we view the evidence in the light most

6

favorable to the verdicts, recognizing that "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." Giddens, 299 Ga. at 111 (citation and quotation marks omitted). Applying these standards, we conclude that the evidence was legally sufficient to support the jury's verdicts as to all of the charges of which the appellants were found guilty. The appellants' specific challenges to the sufficiency of the evidence are discussed below.

(a) All three appellants argue that the evidence did not support their convictions for aggravated assault with a deadly weapon against Sabrina, because there is no evidence that a gun was ever pointed directly at her.

> A person commits the offense of aggravated assault when he uses a deadly weapon to commit an act which places another [person] in reasonable apprehension of immediately receiving a violent injury. Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence. . . . [T]he presence of a deadly weapon "would normally place a victim in reasonable apprehension of being injured violently."

Jackson v. State, 251 Ga. App. 578, 579 (554 SE2d 768) (2001) (footnotes omitted).

Sabrina testified that when the two intruders rushed into the victims'

motel room and she saw one of them pointing at gun at Khaljil, she felt threatened and tried to hide, fearing for her life. Sabrina's fear of being injured violently by the intruder's deadly weapon was entirely reasonable, and the evidence was therefore sufficient to prove the aggravated assault against her. See id.

(b)     Snelson also disputes the evidence supporting his conviction for aggravated assault against Khaljil, noting that Khaljil testified that he was "politely tapped" with a gun by one of the intruders and arguing that polite tapping does not constitute an aggravated assault as alleged in the indictment, which accused the appellants of "striking" Khaljil with a dangerous object (a firearm). Although Khaljil testified at one point on cross-examination that he was "politely tapped" with a gun, he also testified that he was "struck" and "hit" in the head with the gun and then he "fell to the floor" and "slid up under the bed." Whether Khaljil was "politely tapped" or "struck" was within the province of the jury to decide, and the jury's conclusion that Khaljil was struck with the firearm as alleged in the indictment was supported by the evidence. See Giddens, 299 Ga. at 111.

(c)     Finally, Snelson and Smith argue that the evidence did not

8

sufficiently prove that they were involved in the crimes. Specifically, Snelson argues that because the evidence showed that he left Room 161 after snatching the $5 bill from Khaljil's hand, he could not be a party to the crimes that followed, and Smith argues that, other than his admitted presence at the motel with Key, Gibens, and Snelson, there was no evidence that he participated in the crimes. A person who "[i]ntentionally aids or abets in the commission of the crime" may be convicted as a party to the crime. OCGA § 16-2-20 (a), (b) (3). "Although mere presence at the scene of a crime is not sufficient to prove that one was a party to the crime, 'presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.'" Powell v. State, 291 Ga. 743, 744-745 (733 SE2d 294) (2012) (citation omitted).

As described in Division 1, the evidence showed that Snelson and Smith were present in Room 160 for the discussion with Stewart, Tae, and York about robbing the drug dealer in Room 161. York then saw Snelson and Smith going to the victims' room with Stewart and Tae as part of that plan, and Snelson and Tae (and perhaps also Smith and Stewart) were armed with guns. After the shots were fired, Snelson and Smith ran down the stairs away from the victims'

9

room with Stewart and Tae, got in two vehicles waiting in the parking lot, and traveled to Marietta. Snelson was carrying a large amount of marijuana when he got to the vehicles, and when the group arrived in Marietta, Snelson and Smith took part in dividing that marijuana – the proceeds of the armed robbery that led to the murder – with Stewart and Tae. From this evidence, the jury could reasonably infer that all of the appellants (and Tae) acted with a shared criminal intent to rob the victims at gunpoint, "and for this reason, the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt" that they were at least parties to the crimes of which they were convicted. Id. at 745.

3. As explained in footnote 1 above, the trial court first sentenced each appellant for both counts of felony murder. That was error, because a defendant may be sentenced on only one murder count involving the same victim. See Malcom v. State, 263 Ga. 369, 371 (434 SE2d 479) (1993). Seeking to correct this error, the trial court then amended the sentences, purporting to "merge" the felony murder count based on armed robbery into the felony murder count based on aggravated assault. By operation of law, however, the second felony murder count was actually "vacated." See Cowart v. State, 294 Ga. 333, 336 (751 SE2d

10

399) (2013) ("Because both murder counts involved the same victim, one of the guilty verdicts was vacated by operation of law.").

Although this distinction makes no difference to the punishment that the appellants will receive for the felony murder verdicts, as they remain eligible for only one sentence for killing Eric, it is significant in addressing the verdicts on the felonies underlying the felony murder charges, because a count cannot merge into a vacated conviction. See Malcolm, 263 Ga. at 373 ("[T]he underlying felony does not merge, as a matter of law, into a vacated felony murder conviction . . . ."). Thus, the armed robbery verdict cannot merge into the vacated conviction for felony murder based on armed robbery. See id. The armed robbery count also does not merge into the conviction for felony murder based on aggravated assault. See Hill v. State, 281 Ga. 795, 797 (642 SE2d 64) (2007) (explaining that because the trial court chose to sentence the appellant for felony murder based on aggravated assault rather than felony murder based on armed robbery, the court correctly sentenced him on the armed robbery count).

The parties have not raised this merger error, but having noticed it, we may direct that it be corrected. See Smith v. State, 298 Ga. 357, 358-359 (782

11

SE2d 26) (2016). Accordingly, we vacate the appellants' sentences to the extent that each appellant was not sentenced on the armed robbery count against him, and we remand the cases for the trial court to sentence the appellants for armed robbery. See id.

4. Stewart alone raises two other contentions, neither of which has merit. He first contends that York had a secret deal with the State at the time he testified, and so the prosecutor misled the jury by allowing York to testify that he did not have a deal. Stewart acknowledges, however, that there is nothing in the record to support this claim. To the contrary, York, his counsel, and the prosecutor consistently represented that no deal was reached until after York testified. (After the trial, York entered a plea agreement by which he pled guilty to criminal attempt to commit robbery and was sentenced to ten years to serve seven in prison.) Stewart suggests that York likely hoped or expected to benefit from his testimony. But one-sided hope or expectation does not a deal make, and Stewart was able to – and did – thoroughly cross-examine York about his motives for testifying. See Nwakanma v. State, 296 Ga. 493, 495-497 (768 SE2d 503) (2015).

Stewart also contends that his trial counsel was ineffective in failing to

12

object to what Stewart asserts were improper victim impact arguments made by the prosecutor. This claim, however, was not preserved for review on appeal, because Stewart failed to raise it at the earliest practicable moment; he did not raise it in his amended motion for new trial or at the motion for new trial hearing, and the trial court therefore did not rule on it. Stewart was represented at the motion for new trial stage by new counsel, and new counsel was required to raise any allegations of ineffective assistance of trial counsel at that point in order to preserve them for appellate review. See Prince v. State, 295 Ga. 788, 793 (764 SE2d 362) (2014).

Judgments affirmed in part and vacated in part, and cases remanded for resentencing. All the Justices concur.