### S16A1003. CREWS v. THE STATE.
(793 SE2d 393)

MELTON, Justice.

Following a jury trial, J'Quante Crews was found guilty of malice murder (Count 1), two counts of felony murder (Counts 2 and 4), aggravated assault (Count 5), armed robbery (Count 6), possession of a firearm during the commission of a felony (Count 7), and possession

---

of a firearm by a convicted felon (Count 8) in connection with his role in the shooting death of Vernon Forrest.[1] On appeal, Crews contends that his convictions should be reversed and that he should be granted a new trial due to alleged juror misconduct, and that the trial court erred in admitting into evidence expert testimony from a lay witness. For the reasons that follow, we find Crews' challenges to his convictions to be without merit. Thus, we affirm his convictions. However, we also find the trial court erred with respect to the portion of Crews' sentence relating to armed robbery (Count 6), so we must also vacate the erroneous portion of Crews' sentence and remand this case to the trial court for the imposition of an appropriate sentence on the armed robbery count. Accordingly, we affirm in part, vacate in part, and remand this case for sentencing on armed robbery (Count 6).

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, at around 11:00 p.m. on July 25, 2009, Crews was at a Chevron gas station near Mechanics-ville, in Atlanta, Georgia, along with his co-indictees, Demario Ware and Charmon Sinkfield. The three men were sitting in Ware's red Pontiac, waiting for their friends, Patrick David Wilson and Anthony Hollis, before going to a strip club. Eventually, Wilson and Hollis arrived at the Chevron in a blue Ford Expedition.

The victim, Forrest, who was driving a Jaguar XS, also arrived at the gas station. Forrest was with ten-year-old Ernest Guillory, who needed to stop at the gas station to use the bathroom. While Guillory was inside the Chevron store, Sinkfield had a brief conversation with Ware and Crews before Ware exited his red Pontiac to approach

---

[1] On August 25, 2009, Crews was indicted for malice murder, three counts of felony murder (predicated on aggravated assault, possession of a firearm by a convicted felon, and armed robbery), aggravated assault with a deadly weapon, armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a March 26-April 2, 2012 jury trial that was separate from the trial of his co-indictees, Crews was found guilty on all counts except for the felony murder count predicated on possession of a firearm by a convicted felon (Count 3). On April 3, 2012, the trial court sentenced Crews to life imprisonment without the possibility of parole for malice murder, and purported to "merge" the two felony murder counts upon which Crews had been found guilty, as well as the independent aggravated assault and armed robbery counts upon which the felony murder counts were based, into the malice murder count for sentencing purposes. The trial court also sentenced Crews to five years consecutive to the malice murder count for possession of a firearm by a convicted felon and five years consecutive to the possession by a convicted felon count for the possession of a firearm during the commission of a felony count. Crews filed a motion for new trial on April 12, 2012, which he amended on November 6, 2013 and April 7, 2014. Following a hearing, the court denied the motion on May 20, 2014. Following the payment of costs on March 10, 2016, Crews' timely appeal was docketed in this Court for the April 2016 term and submitted for decision on the briefs. As explained more fully in the body of this opinion, while Crews' arguments to challenge his convictions on appeal are without merit, the trial court erred with respect to its sentencing of Crews, and this case must therefore be remanded for resentencing to correct for that error.

Forrest with the purpose of robbing him. Crews then drove the red Pontiac out of the service station. Sinkfield got into the Expedition with Wilson and Hollis, and they left the gas station and went around a corner near the gas station.

While Forrest was bending down to put some air in his car tires, Ware stood over him with a gun, ordering him to "lay it down," and saying "I got you." Ware then stole Forrest's diamond-studded watch and "world championship boxing" ring and ran away. Forrest then pulled out his own gun and began chasing Ware in an effort to get his stolen items back.

Ware forced his way into an apartment complex by threatening a resident there with his gun. Ware then hid behind the apartment complex gate, and he started "looking for [a] red car."

While Forrest was chasing Ware, Sinkfield, while on Wilson's phone, received a call from Crews. After this call, Sinkfield told Wilson to drive to the apartment complex where Ware had been hiding and where Forrest had been chasing him. When they arrived, Sinkfield got out of the Expedition and confronted Forrest. At one point, the confrontation appeared to resolve, and Forrest began to walk away. As he did so, Sinkfield shot him in the back several times, killing him.

Shortly after Crews had called Sinkfield, Ware called Crews several times, after which Crews drove to the apartment complex where Ware had been hiding out. When Crews arrived in Ware's red Pontiac, Ware ran out to the car and got into the front passenger seat. Crews then drove toward the scene of the shooting, and he picked up Sinkfield near some railroad tracks to which Sinkfield had run after having killed Forrest.

The evidence was sufficient to enable a rational trier of fact to find Crews guilty of all of the crimes of which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also OCGA § 16-2-20 (parties to a crime).

However, while the evidence was sufficient to sustain the convictions, the trial court erred with respect to a portion of Crews' sentencing. Specifically, Crews was charged with malice murder, three counts of felony murder (based on aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and armed robbery), aggravated assault with a deadly weapon, armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The jury found him guilty on all counts except for the felony murder count based on possession of a firearm by a convicted felon, and the trial court purported to "merge" the two remaining felony murder counts and the independent aggravated assault and armed robbery counts upon

which the felony murder counts were based, into the malice murder count for sentencing purposes. However, the two felony murder counts should have been "vacated by operation of law" rather than merged into the murder count, "because they involved the same victim as the malice murder count." *Graves v. State*, 298 Ga. 551, 556 (4) (783 SE2d 891) (2016).

> Accordingly, while [the] aggravated assault [count] properly merged with malice murder as a matter of fact, see *Culpepper v. State*, 289 Ga. 736, 738 (2) (a) (715 SE2d 155) (2011), there w[as] no felony murder count[ ] into which the . . . [remaining] independent felon[y] [of armed robbery] could merge as a matter of law. *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993) (once a felony murder count has been vacated, the underlying felony cannot merge into the felony murder count); see also *Leeks v. State*, 296 Ga. 515 (7) (769 SE2d 296) (2015). Therefore, the trial court is required to vacate that portion of its sentencing order purporting to merge the . . . independent felon[y] [of armed robbery] and impose [a] proper sentence[ ] on th[at] count[ ].

Id.

2. Crews contends that juror number 41, Shaneka Brown, engaged in irregular conduct that deprived him of a fair trial. We disagree. Although

> [t]here is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred . . . [o]ur inquiry . . . must be directed to whether this error is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injury. See *Smith v. State*, 218 Ga. 216 (2) (c) (3) (126 SE2d 789) (1962).

(Citations and punctuation omitted.) *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996). In this regard, "[a]bsent a showing that any action by a juror in [an] appellant's case was presumptively so prejudicial as to infect the verdict and require that [the] appellant be given a new trial, . . . [a] trial court d[oes] not err in refusing to grant the motion for new trial." *Pass v. State*, 273 Ga. 534, 536 (2) (543 SE2d 719) (2001).

The record here reveals that, after opening statements, Brown, the juror in question, wrote a note to the trial court informing the

court, "I know Twin." Twin was Sinkfield's nickname, and Brown overheard one of the attorneys say the name "Twin" in the case. The trial court questioned Brown outside the presence of the other jurors, and Brown stated that she knew Twin because he was her nephew's uncle, and that her nephew had mentioned to her that Twin was in jail for "something about him and a boxer." However, Brown said that she knew nothing more specific about the matter, that she did not spend time with Twin, and that she would not talk to any of the jurors about the fact that she recognized the name Twin. Under further questioning, Brown also stated that she would remain fair and impartial and decide Crews' case based on the evidence presented. Following the initial exchange between the trial court and Brown after opening statements, Crews' counsel argued to the trial court that Brown should *not* be dismissed as a juror, because Crews, and not Sinkfield, was on trial, and because Sinkfield was not going to be a witness in the case.

Following the trial, counsel for Sinkfield sent a letter to the trial court indicating that Sinkfield had spoken with Brown on the phone during Crews' trial. At the hearing on Crews' motion for new trial, neither Sinkfield nor his counsel testified. However, Brown did testify, stating that Sinkfield only had her phone number for purposes of getting in touch with her nephew or Brown's sister (the mother of Sinkfield's nephew). Brown also testified that Sinkfield called her and said to her that he knew that she was on the jury in Crews' case, but Brown immediately told Sinkfield that she could not discuss the trial and handed the phone to her sister. Brown did not know where Sinkfield was calling her from, as she never accepted any collect call from him, and she did not recognize the number from which Sinkfield was calling when she picked up the phone. Brown did not initiate any contact with Sinkfield, and, although Sinkfield tried to call her on more than one occasion, any time he called, Brown handed the phone immediately to her sister or nephew. She did not discuss the case with Sinkfield, her sister, or anyone else, and she reaffirmed at the motion for new trial hearing that she had no vested interest in Crews' case and made her decision in the case based on the law presented by the trial court and the evidence presented at trial.

Under these circumstances, we do not find "any action by [the] juror in [this] case [that] was presumptively so prejudicial as to infect the verdict and require that [Crews] be given a new trial." *Pass*, supra, 273 Ga. at 536 (2). Rather than actively engaging in conduct that was so prejudicial to Crews as to infect the verdict, Brown endeavored to fulfill her duty to remain an impartial juror and avoid outside influences in order to base her decision in the case solely on the law and the evidence presented at trial. We find nothing in

Brown's actions that "can be characterized as juror misconduct which rises to a level of constitutional significance." Id. citing *Watkins v. State*, 237 Ga. 678, 683-685 (229 SE2d 465) (1976) (juror misconduct occurred when jury members intentionally gathered highly prejudicial, extrajudicial evidence and communicated findings to other jury members).

3. Crews contends that the trial court erred in allowing a lay witness — a records custodian from Metro PCS — to testify that, because the cell phones of Sinkfield and Ware were "pinging" off of two cell phone towers near the Chevron gas station where the robbery took place, that the cell phones could have been within a mile and a half of those cell phone towers. However, assuming without deciding that the trial court erred in admitting this testimony, we find no harm. Indeed, surveillance cameras and eyewitness testimony placed Sinkfield and Ware at the Chevron station and near the area of the murder, making the evidence of their cell phones being near the Chevron station largely cumulative of other admissible evidence. See, e.g., *Moody v. State*, 277 Ga. 676, 680 (594 SE2d 350) (2004).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.*

DECIDED NOVEMBER 7, 2016.

*Lauren B. Shubow, Jessica A. Seares, Kenneth D. Kondritzer*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Kevin C. Armstrong, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.