305 Ga. 457
FINAL COPY

S18A1295.  WARE v. THE STATE.

WARREN, Justice.

Demario Ware was convicted of felony murder during the commission of an armed robbery in connection with the shooting death of Vernon Forrest.[1] On appeal, Ware contends that the trial court erred when it gave the pattern jury instruction on felony murder instead of his requested instruction on

---

[1] The murder was committed on July 25, 2009.  On August 25, 2009, a Fulton County grand jury indicted Ware, J'Quante Crews, and Charmon Sinkfield for malice murder, three counts of felony murder, aggravated assault, armed robbery, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Ware was tried separately before a jury from August 8 to 18, 2011.  The counts of possession of a firearm by a convicted felon and the felony murder predicated on that charge were nolle prossed and were not submitted to the jury.  The jury found Ware guilty of felony murder predicated on armed robbery and the separate count of armed robbery but not guilty of the remaining counts.  The trial court sentenced Ware to life imprisonment without parole for felony murder, and the armed-robbery verdict merged into the felony-murder conviction.  Ware filed a timely motion for new trial on September 13, 2011, which was later amended by his new counsel on January 4, 2017.  The amended motion was denied on March 3, 2017, and Ware filed a timely notice of appeal on March 20, 2017. The case was docketed in this Court for the August 2018 term and submitted for a decision on the briefs.

proximate causation, and by replacing a juror during deliberations. We disagree and affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at Ware's trial showed that at approximately 11:00 p.m. on July 25, 2009, Ware, J'Quante Crews,[2] and Charmon Sinkfield were sitting in Ware's red Pontiac at a Chevron gas station in Fulton County waiting for their friends, Patrick David Wilson and Anthony Hollis, to meet them so that Crews, Sinkfield, Wilson, and Hollis could go to a strip club together. Separately, Vernon Forrest, who was driving a Jaguar, arrived at the gas station with his ten-year-old nephew, E. G., who needed to use the restroom. While E. G. went inside, Forrest began putting air in his tires. After noticing the championship-boxing ring and diamond-encrusted watch that Forrest was wearing, Ware, Crews, and Sinkfield discussed robbing him. Crews gave a firearm to Ware. Ware approached Forrest as he was putting air in his tires, robbed him at gunpoint, and fled on foot. Forrest then pulled out his own gun and began

---

[2] Crews was convicted of Forrest's murder and other offenses, and we have already affirmed Crews's convictions, vacated a portion of his sentence, and remanded that case for resentencing. *Crews v. State*, 300 Ga. 104 (793 SE2d 393) (2016).

chasing Ware in an effort to get his stolen items back. Ware ran to a nearby apartment complex where he hid from Forrest.

Meanwhile, before the robbery occurred, Wilson and Hollis had arrived at the service station in a blue Expedition, and Sinkfield got into their vehicle. While Forrest was chasing Ware, Crews drove the Pontiac out of the gas station, and Wilson, Hollis, and Sinkfield separately drove away in the Expedition. After a phone conversation with Crews, Sinkfield had Wilson drop him off at the nearby apartment complex where Forrest had chased Ware, and where Ware was hiding from Forrest. Sinkfield encountered Forrest and, after a confrontation that appeared to eyewitnesses to be resolved, Sinkfield shot Forrest in the back several times as Forrest tried to walk away, killing him. Crews then picked up Ware from the apartment complex where Ware had been hiding, dropped Ware off near Ware's home, and then picked up Sinkfield, before the three men later reconvened at Ware's home.

In addition to several witnesses who later testified that the events transpired as described above, E. G. also identified Ware from a photographic lineup, and then later at trial, as the person he saw robbing Forrest; surveillance footage showed the events that occurred at the gas station; and Ware himself

admitted to the robbery but maintained that there was never any plan or discussion beyond the robbery itself.

Ware does not contest the legal sufficiency of the evidence supporting his conviction. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Ware guilty beyond a reasonable doubt of felony murder predicated on armed robbery. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Crews v. State*, 300 Ga. 104, 105-106 (793 SE2d 393) (2016).

2. Ware contends that the trial court erred by failing to give his requested jury instruction on proximate causation. Ware requested that the trial court specifically charge the jury that "[c]auses the death of another" in the definition of felony murder "refers to proximate cause," see *State v. Jackson*, 287 Ga. 646 (697 SE2d 757) (2010), and that "[n]o legal cause will be found where there intervenes: (1) a coincidence that is not reasonably foreseeable, or (2) an abnormal response," see *Skaggs v. State*, 278 Ga. 19, 20 (596 SE2d 159) (2004). Ware argues that this instruction was necessary for the jury to evaluate

the defense theory that Forrest's death, which was caused by Sinkfield, was not part of Ware's initial robbery but was a separate and distinct act.

The trial court did, however, properly define felony murder as follows: "A person also commits the crime of murder when in the commission of a felony, *that person causes the death of another* human being with or without malice." (Emphasis supplied.) See OCGA § 16-5-1 (c). And the court later gave the pattern jury instruction that explains the requisite legal relationship between the felony and the death as follows:

> If you find and believe beyond a reasonable doubt that the defendant committed the homicide allege[d] in this [bill] of indictment at the time the defendant was engaged in the commission of the felony of aggravated assault or armed robbery, then you would be authori[zed] to find the defendant guilty of murder whether the homicide was intended or not. In order for a homicide to have been done in the commission of either of these felonies, there must be some connection between the felony and the homicide. The homicide must have been done in carrying out the unlawful act and not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be such a legal relationship between the homicide and the felony so as to cause you to find that the homicide occurred before the felony was at an end or before any attempt to avoid conviction or arrest for the felony. The felony must have a legal relationship to the homicide, be at least concurrent with it in part and be a part of it in an actual and material sense. A homicide is committed in carrying out a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007, updated Jan. 2017), § 2.10.30.  Having read the indictment to the jury earlier, the trial court sent out with the jury a redacted indictment including the felony murder count that tracked the causation language of the felony murder statute.  The trial court also thoroughly instructed the jury on the predicate felonies that were charged and on parties to a crime.

"When viewed as a whole, these charges were sufficient to instruct the jury on the principles of proximate causation relevant to this case." *Brown v. State*, 297 Ga. 685, 689 (777 SE2d 466) (2015).  See also *Williams v. State*, 298 Ga. 208, 218 (779 SE2d 304) (2015) ("[T]he instructions as a whole properly informed the jury that in order to convict for felony murder, it was required to determine appellant caused or was a party to the crime in causing the victim's death as a result of appellant's commission of the underlying felonies.  Accordingly, the trial court was not required to give a separate charge on proximate causation. [W]e find no error in the trial court's charge as alleged in this enumeration of error, 'plain or otherwise.'" (citation omitted)); *Whiting v. State*, 296 Ga. 429, 430-431 (768 SE2d 448) (2015) (the indictment and jury charge were "sufficient to inform the jury that, in order to convict [the defendant] of the felony murder of [the victim], it had to determine that [the

defendant] caused or was a party with [the shooter] in causing the victim's death during the [predicate offense]. Indeed, the charge given adequately informed the jury that [the defendant] could only be found guilty of felony murder if the [predicate felony] was the proximate cause of [the victim's] death. The trial court was not required to give a separate charge on proximate causation in order to make this point." (citations and punctuation omitted)); *Flournoy v. State*, 294 Ga. 741, 746 (755 SE2d 777) (2014) ("The trial court's instruction on felony murder and party to a crime, which referenced the allegations of the indictment, was sufficient to inform the jury that, in order to convict, it had to determine Flournoy caused or was a party in the causing of [the victim's] death, and thus no error is shown by the trial court's failure to give a charge on proximate cause.").

Ware's reliance on *Skaggs* is misplaced. The language that he quotes from *Skaggs*, 278 Ga. at 20, is part of a discussion of the sufficiency of the evidence of causation — not an instruction that was given to the jury in that case. But explanatory language in prior case law is not required to be included in jury instructions at a defendant's request. See *Pecina v. State*, 274 Ga. 416, 421 (554 SE2d 167) (2001) ("[E]ven though language used by the appellate courts in a decision may embody sound law, it is not always appropriate to

employ such language in instructing the jury." (citation and punctuation omitted)). Moreover, our review of the archived record in *Skaggs* shows that the causation instruction approved by this Court, see *Skaggs*, 278 Ga. at 22, and given in *Skaggs* was virtually identical to the language used by the trial court in this case. As a result, *Skaggs* undermines, rather than supports, Ware's argument here. Accordingly, the trial court did not err in failing to give Ware's requested jury charge on proximate cause.

3. Ware also contends that the trial court erred when it removed a juror during deliberations and replaced her with an alternate juror. We disagree because the trial court did not abuse its broad discretion to replace a juror with an alternate for good cause.

On the first day of trial, August 8, 2011, after discussing the expected length of trial with the attorneys, the trial court told the venire that "the case may last approximately five days," but that there was an "outside possibility that the case could run over til[ ] the first part of next week." The court asked if it would be a hardship for any prospective juror to be at trial for "the next five days, possibly going into next week." The juror at issue here did not indicate that she expected any hardship during that time.

As it turned out, however, jury deliberations did not begin until late afternoon on Monday, August 15, 2011, in the second week of trial. On Tuesday, August 16, the juror at issue informed the trial court that she and her husband had airline tickets to fly from Atlanta to Houston the next day for a wedding scheduled to take place on Saturday, August 20. The court instructed the juror to contact the airline that evening to see if modifications could be made to her flight reservation. The next morning, Wednesday, August 17, the juror informed the court that it would cost an extra $660 to change the tickets to a later day that week. The court informed the parties that the juror would have to leave by 1:00 p.m. to make her original flight, and asked the parties for input about whether or not the court should excuse the juror for this hardship. The prosecutor had no objection to an excusal, but the defense requested "that she be kept on the jury" and offered to bear the full expense of the change in flight reservations. The prosecutor argued that it would not be appropriate for defense counsel to pay for a juror's travel, even if the money were paid through the court and not directly from a party. The trial court suggested that the juror would not be informed of the source of the funds, so as to not create bias, but the court also noted its concern that deliberations could potentially last until Saturday, the date of the wedding that the juror was trying to attend in Houston.

After further discussion about unrelated matters, the court stated that "in light of the time," it had made a decision to excuse the juror and put an alternate on the jury. The court noted that the juror's excusal was over the defense's previous objection. When defense counsel wanted to know if it was the juror's desire to be excused, the trial court had her brought into the courtroom and asked her if she wanted to be excused. She replied that she would like to be excused due to "the affordability of the difference in . . . airfare." The trial court excused the juror and replaced her with an alternate. Ware argues that there was not good cause under OCGA § 15-12-172 to excuse the juror as unable to perform her duty, especially given defense counsel's offer to pay the additional costs for a change of flights with the juror being told only that the money came from the court.

A trial court may replace a juror with an alternate whenever the juror "upon other good cause shown to the court is found to be unable to perform his duty[.]" OCGA § 15-12-172.[3] And the "court has broad discretion to determine whether it is appropriate to remove a juror." *Smith v. State*, 298 Ga.

---

[3] The entire first sentence of OCGA § 15-12-172 provides: "If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated."

357, 360 (782 SE2d 26) (2016). The trial court may remove a juror even after deliberations have begun, see OCGA § 15-12-172 (court may replace a juror with an alternate as provided in the statute "at any time, whether before or after final submission of the case to the jury"), so long as the facts presented to the court show "some sound basis" upon which the court exercises its discretion to remove the juror. *Butler v. State*, 290 Ga. 412, 417 (721 SE2d 876) (2012) (citation and punctuation omitted).

Based on the trial court's statements and questioning during voir dire, the juror at issue here had a reasonable expectation that she would be discharged prior to her scheduled flight. See *Laguerre v. State*, 301 Ga. 122, 126 (799 SE2d 736) (2017) (explaining that it was proper to consider the "reasonable expectation of discharge" by multiple jurors in the context of determining the necessity for a mistrial). And even assuming (without deciding) that defense counsel paying for the cost of the juror's changed flight through the court would have been proper, it would not necessarily have resolved her scheduling conflict if deliberations had continued beyond two more days, as the court acknowledged was possible. Courts in other jurisdictions have held that "good cause," which "may encompass any of the inevitable vagaries of the many trial participants' complex lives," includes

prearranged business or personal travel plans, whether they come to light during voir dire or not. See, e.g., *United States v. Jones*, 747 Fed. Appx. 348, 355 (6th Cir. 2018) (summarizing federal case law about what constitutes good cause, and holding that the district court did not abuse its discretion in replacing a juror because of her prearranged travel plans and business obligations that came to light after the jury was sworn); *Commonwealth v. Colton*, 73 NE3d 783, 796 (Mass. 2017) ("[W]e cannot say on this record that the judge abused his discretion by empanelling and later discharging the juror due to the juror's impending flight."). Thus, a trial court's broad discretion is properly exercised in such cases after due consideration of the totality of the circumstances surrounding the juror's travel plans. See *Cummings v. State*, 280 Ga. 831, 834-835 (632 SE2d 152) (2006) (trial court did not abuse its discretion in replacing a juror for good cause under OCGA § 15-12-172 based on the "totality of the circumstances"); *Hines v. State*, 320 Ga. App. 854, 861 (740 SE2d 786) (2013) (trial court did not abuse its discretion in removing a juror because of his travel plans, considering his admitted distraction and irritation during deliberations). In this case, the trial court considered and weighed the relevant circumstances, including the length of the trial that exceeded expectations, the juror's financial concerns and desire to be excused, the sensitive nature of defense counsel's

proposal to pay the juror's increased expenses even if the court acted as a conduit for such payment, and the potential for a repeat of the scheduling conflict later in the week. Under the circumstances, the trial court did not abuse its discretion by replacing the juror during deliberations with an alternate juror.[4]

Judgment affirmed. All the Justices concur.

---

[4] We note that Ware does not claim, and the record does not show, that the juror at issue was a "holdout" or in the minority, much less that she was removed for that reason. See *Moon v. State*, 288 Ga. 508, 513 (705 SE2d 649) (2011). Cf. *Wallace v. State*, 303 Ga. 34, 38 (810 SE2d 93) (2018) ("We acknowledge that alternate jurors generally should not serve to substitute for minority jurors who cannot agree with the majority, as taking such a minority position does not by itself render a juror incapacitated or legally unfit to serve, and making such a substitution may constitute an abuse of discretion."). And Ware "does not contend that the alternate juror who replaced [the removed juror] was not qualified to serve." *Butler*, 290 Ga. at 418 (citation and punctuation omitted).

Decided March 11, 2019.

Murder. Fulton Superior Court. Before Judge Dempsey.

Juwayn Haddad, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.