## A08A2285. SMITH v. THE STATE.
(674 SE2d 647)

PHIPPS, Judge.

Gary Wayne Smith was convicted of child molestation and sexual battery. Claiming ineffective assistance of counsel, Smith asserts that his trial counsel violated the trial court's ruling on Smith's motion in limine and elicited prejudicial testimony from a child psychologist who testified for the state. Finding no merit in his claims of deficient performance, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence showed that in July 2005, eight-year-old K. E. lived with her mother, her brother and Smith, her mother's boyfriend. K. E. slept in the same room with her brother, in a separate bed. One night, she woke and discovered that Smith was in her bed, with his finger inside her underpants, touching "between [her] legs." K. E. got out of bed and told her mother what had happened, but her mother did not believe her so she went and slept on the couch. K. E. told her father what Smith had done the next time she went to his house.

K. E.'s brother testified that he saw Smith in K. E.'s bed during the night more than once. He did not tell anyone about it at the time.

K. E.'s father testified that when K. E. told him what Smith had done, he went to the sheriff's office and filled out a complaint. He did not question K. E. further about the incident because he said it seemed to make her uncomfortable.

Smith testified that he had a great relationship with K. E. and her brother and that he first heard of K. E.'s allegations after K. E.'s mother picked up K. E. and her brother from a weekend visit at their father's house. According to Smith, K. E. and her brother watched movies before bed and often fought over the VCR. He testified that many times he would lie down with K. E. to stop the fighting, but said he did not fall asleep in her bed.

K. E.'s mother testified for the defense. She stated that her children got along well with Smith. While Smith was living with them, she was in a custody battle with the children's father. She

testified that he was in contempt of court for missed child support payments and that he did not like paying child support. K. E.'s father had made it clear that he wanted custody of their children. She described him as a very controlling person. K. E.'s mother denied that K. E. ever told her that Smith had touched her inappropriately.

Smith claims that his trial counsel was ineffective. To establish trial counsel's ineffectiveness, Smith needed to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[1] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[2] The test for reasonable attorney performance is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."[3] When reviewing a trial court's ruling on trial counsel's effectiveness, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[4]

1. Smith claims that his trial counsel violated the trial court's ruling on Smith's motion in limine, thereby allowing otherwise inadmissible evidence to be admitted.

Prior to trial, Smith's counsel moved to exclude any mention of an incident where K. E.'s mother allegedly asked K. E.'s brother to urinate in a medicine bottle for Smith. The trial court ruled that the state could not go into that issue.

During Smith's examination, Smith volunteered that during the custody battle between K. E.'s mother and father, representatives from the Department of Family and Children Services (DFACS) visited their home multiple times. Smith's counsel then asked whether he ever had to give a urine specimen as a result of DFACS's visits and Smith responded that both he and K. E.'s mother had given samples and that they had never heard anything else about them.

On cross-examination, the state asked whether Smith had gotten K. E.'s brother to provide urine for him. Smith's trial counsel immediately objected and, outside the jury's presence, argued that the state's questioning violated the court's ruling on Smith's motion in limine and explained that it was a completely different matter than the urine test requested by DFACS. The court ruled that the

---

[1] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[2] Id. at 687-689.

[3] *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998) (citations and punctuation omitted).

[4] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (citation omitted).

state could continue its cross-examination on that subject, and Smith's trial counsel strenuously objected to the court's ruling. The prosecutor asked Smith if he had asked K. E.'s brother to provide a urine sample so that he could give it to his employer. Smith denied that he had done so. K. E.'s mother also denied that she had ever asked K. E.'s brother to provide urine for Smith.

After Smith rested his case, the state recalled K. E.'s brother, who testified that his mother had once asked him to urinate in a bottle because the medicine that Smith took made it look like he was on drugs. Smith responded by denying that he had to give a urine sample at work during the time period at issue.

The record indicates that the question about the DFACS urine test was designed to show the acrimony associated with the custody battle between K. E.'s parents, which resulted in repeated home inspections by DFACS. The main thrust of Smith's defense was that the custody battle and K. E.'s father's controlling behavior had resulted in false criminal allegations against him.[5] Based on trial counsel's response and strenuous objection to cross-examination contrary to the court's motion in limine ruling, he clearly did not foresee that the trial court would allow the state to examine Smith about a matter he believed had been foreclosed by the court's pretrial ruling. Although the question was very close as to whether Smith's testimony regarding the urine test requested by DFACS opened the door to allow admission of the testimony excluded by the trial court's ruling, it was not unreasonable for Smith's trial counsel to elicit testimony about the DFACS test, in light of the ruling he had procured banning evidence of the alleged unrelated urine test. Under the circumstances, we cannot conclude that Smith's trial counsel's performance was deficient in this instance.[6]

2. Smith claims that his trial counsel elicited prejudicial testimony in his cross-examination of the psychologist who had interviewed K. E. Specifically, Smith's trial counsel asked the psychologist whether she was familiar with statistics that show when false allegations of child molestation would occur. She said that she had read some articles about that topic, but did not recall exact percentages. She testified that reports tended to indicate that one to three percent of people who make disclosures about sexual abuse are lying. Trial counsel asked whether she was familiar with studies stating that up to 60 percent of sexual abuse disclosures are false. She said

---

[5] By the time of trial, K. E.'s father had obtained custody of K. E. and her brother.

[6] See *Marshall v. State*, 275 Ga. 740, 745 (10) (571 SE2d 761) (2002) (defense counsel not ineffective for asking question that unexpectedly opened door to introduction of defendant's prior conviction); see also *Upton v. Parks*, 284 Ga. 254, 257 (2) (664 SE2d 196) (2008) (we do not evaluate trial counsel's tactics and strategy in hindsight).

no, but admitted that she had seen studies showing much larger percentages. She then distinguished those studies as tending to include cases of accidental touching and cases where criminal charges were not pressed because the allegations were not substantiated.

Smith claims that his trial counsel erred in his questioning because an expert is not permitted to testify whether a victim is telling the truth in an individual case. Smith's trial counsel, however, was permitted to ask the expert witness whether children make false allegations about sexual abuse and the possible reasons for this behavior.[7] He never asked the psychologist for an opinion about whether K. E. was lying and whether any such lie might be related to the custody dispute between her parents.

At the motion for new trial hearing, Smith's trial counsel testified that he had anticipated a much different response when he asked the psychologist about the percentage of false allegations in child abuse cases. He had obtained articles showing that 60 percent of child abuse accusations are unsupported, and specifically asked the psychologist whether she was familiar with those articles. He was not ineffective merely because she gave an unanticipated response to his initial question and then qualified her response that she was aware of studies showing higher percentages of false allegations in child abuse cases. Although it appears that trial counsel's cross-examination tactics may have backfired, a reasonable tactic that backfires does not necessarily constitute deficient performance.[8] Under the circumstances here, Smith has failed to overcome the strong presumption that his counsel's conduct constituted sound trial strategy.[9]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 4, 2009.

*Whitmer & Law, George H. Law II*, for appellant.

---

[7] *Duncan v. State*, 232 Ga. App. 157, 160 (3) (500 SE2d 603) (1998).

[8] *Adams v. State*, 290 Ga. App. 299, 301 (1) (c) (659 SE2d 711) (2008).

[9] See id.; see generally *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982) (simply because other lawyers might have exercised different judgments and conducted defense in different manner does not require a finding that trial counsel's representation was so inadequate as to amount to a denial of effective assistance of counsel).

N. *Stanley Gunter, District Attorney, Thomas D. Wight, Assistant District Attorney*, for appellee.