**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 21, 2018**

# In the Court of Appeals of Georgia

A18A0758. PATTERSON v. THE STATE.

REESE, Judge.

A Fulton County jury found Charles Patterson guilty of two counts of armed robbery,[1] two counts of aggravated assault,[2] and one count of the possession of a firearm during the commission of a felony.[3] He was sentenced to concurrent life sentences and a five-year consecutive sentence on the firearm charge. Following the denial of his motion for a new trial, he files this appeal, arguing that he was denied the effective assistance of counsel, that there was insufficient evidence to support his

---

[1] See OCGA § 16-8-41 (a).

[2] See OCGA § 16-5-21 (a) (1), (2).

[3] See OCGA § 16-11-106 (a).

convictions, and that the trial court erred in denying his motion to suppress. For the reasons set forth, infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[4] the record shows the following. On August 5, 2007, Ashley Paige and Stephanie Clark, both sophomores at Clark Atlanta University, drove to a friend's townhome in Atlanta. Upon arrival, they parked in a lighted parking space across from the townhome, exited the vehicle, and began walking. A man ran up behind them with a gun, told them not to scream, and grabbed their purses, which contained their cell phones. The man waved the gun and told Paige to empty her pockets. After she turned her pockets inside out to show him they were empty, the man ran away.

Paige described the robber as a dark-skinned male with a small build, wearing a pulled-down "bucket hat" or "fisherman's hat." She only got a glimpse of his face and was later unable to identify the robber from a photo lineup.

Clark described the man as having dark skin with an unusual mark, she later identified as a tattoo on his forehead, wearing a black shirt and a "flipped up" bucket hat, and carrying a silver gun with a white handle. She testified that during the

---

[4] See *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Hogan v. State,* 330 Ga. App. 596, 598 (1) (768 SE2d 779) (2015).

2

robbery, she continually focused on "his face and at the gun[, and] . . . the picture of the person was just ingrained in [her] memory." Two weeks after the robbery, Clark identified the Appellant from a photo lineup on a computer screen and identified him again from a black and white paper photo lineup. She also identified him in court during the jury trial.

Clark testified that, after the robbery, she replaced her stolen cell phone, but kept her previous phone number. About 24 hours after the crime occurred, she received a phone call from a woman she did not know, later identified as Santana Hicks, who was looking for the Appellant. While speaking with Clark, Hicks described the Appellant's gun as "silver with a white handle[,]" and said that she had seen items that matched some of Clark's stolen items. Hicks told Clark she knew who had committed the robbery and referred to the robber as "Charles" and by his nickname, "Spade." After the conversation, Clark called the Atlanta Police Department detective assigned to the case, Detective Hood, and gave him Hicks' phone number.

A couple of weeks later, Clark had a second conversation with Hicks, the day before she viewed the photo lineups from the robbery. During that conversation, Hicks told her that the Appellant was on his way to Hicks' home and asked if Clark

wanted to come and try to retrieve her belongings. Clark declined to go to Hicks' home, but she called Detective Hood and told him about the call. The Appellant was subsequently arrested near Hicks' home.

At trial, Hicks testified on behalf of the State and stated that the Appellant called her from Clark's phone number to speak to Hicks' sister, the mother of two of his children. When Hicks called the number back and spoke to Clark, she learned that Clark had been robbed. She asked Clark to describe the robber, and after hearing the description, Hicks told Clark "his name is Charles Patterson." Hicks testified that, during the same conversation, she told Clark that the Appellant had robbed two different women at an Applebee's restaurant using "a silver handgun[.]" When Hicks spoke to Detective Hood about the robbery involving Clark and Paige, he asked her to "come down and make a statement." Hicks testified that she called 911 and reported that the Appellant had stolen some items from her home.

Detective Hood testified that he initially spoke with Clark on August 13, 2007. The next day he conducted the photo lineups for both Paige and Clark.

The Appellant testified at trial that he and Hicks' sister did not get along well. He further testified that he and Hicks had a sexual encounter, unbeknownst to Hicks' sister, and Hicks did not like him. The Appellant denied robbing Paige and Clark, and

4

testified that he received Clark's cell phone from a man named "Bicycle" in exchange for drugs.

The jury found the Appellant guilty of two counts of armed robbery, two counts of aggravated assault, and one count of possession of a firearm during the commission of a felony. He filed a motion for new trial. After a hearing, the trial court denied the Appellant's motion. This appeal followed.

Generally, on appeal from a criminal conviction, the appellate court

view[s] the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The reviewing court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[5] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the reviewing court] must uphold the jury's verdict.[6]

"The standard of *Jackson v. Virginia,* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the

---

[5] 443 U.S. at 319 (III) (B).

[6] *Rankin v. State,* 278 Ga. 704, 705 (606 SE2d 269) (2004) (additional citations omitted).

5

crimes charged."[7] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the trial court erred in denying his motion to suppress the photo lineup identification as impermissibly suggestive and in allowing Clark to make an in-court identification. We disagree.

Generally, in considering the admissibility of a pretrial identification, this Court first determines

> whether the identification procedure was impermissibly suggestive. If the answer to that inquiry is negative, [the reviewing court] need not consider the second question — whether there was a substantial likelihood of irreparable misidentification. Conversely, [the reviewing court] may immediately proceed to the second question and, if the answer thereto is negative, [the reviewing court] may entirely pretermit the first question.[8]

Thus, even if the circumstances surrounding Clark's pretrial identification of him as the robber "rendered the showup impermissibly suggestive, the evidence is

---

[7] *Donnell v. State,* 285 Ga. App. 135 (1) (645 SE2d 614) (2007) (citation omitted).

[8] *Butler v. State,* 290 Ga. 412, 415 (3) (721 SE2d 876) (2012) (citation and punctuation omitted).

inadmissible only if[,] under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification."[9]

The trial court denied the Appellant's motion to suppress, finding that Clark's pretrial identification of the Appellant, based on the evidence heard, "was not inherently suggestive and was of independent origin." During the motion to suppress hearing, Clark testified that, she had the opportunity to observe the robber at the scene of the crime and that during her conversation with Hicks, she gave Hicks "the exact descriptions of [the robber's] face and the tattoo[.]" Also, Clark stated that, although the paper version of the photo lineup did not clearly show the tattoo, "[the tattoo] was very evident [on the computer lineup] because the computer [photo lineup was] in color[,]" and she was "very certain" the person she identified in the lineup committed the robbery.

Based on the foregoing, under the totality of circumstances, we hold that there was little likelihood of misidentification of the Appellant by Clark and that the trial court did not err in denying the Appellant's motion to suppress.[10]

---

[9] Id. (citations and punctuation omitted).

[10] See *Jones v. State,* 258 Ga. 25, 27 (3) (365 SE2d 263) (1988) (rejecting claim that in-court identification was impermissibly tainted by pretrial showup identification, where the witness testified that he observed the defendant for three or

2. The Appellant argues that there was insufficient evidence to convict him of the armed robberies because there was no other evidence presented at trial that he committed the armed robberies, and there was no physical evidence such as a weapon found on him when he was arrested. We disagree.

An individual commits armed robbery "when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[11] The victim's testimony is generally sufficient to establish a fact.[12]

Here, Clark testified that she was able to identify the Appellant as the robber from the photo lineup because she kept looking at his face during the robbery. Clark's

_____

four seconds in a well-lit area and gave an accurate, detailed description to officers.).

[11] OCGA § 16-8-41 (a).

[12] *Hammontree v. State,* 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (citing former OCGA § 24-4-8). In 2011, the Georgia General Assembly repealed the Evidence Code in its entirety and replaced it with a new Evidence Code, the provisions of which became effective on January 1, 2013, and which applies to any motion, hearing, or trial commenced on or after such date. Ga. L. 2011, p. 100, §§ 1, 101. Pursuant to that legislative act, former OCGA § 24-4-8 has been reenacted as OCGA § 24-14-8. Because the instant trial took place in March 2009, the former Evidence Code applies. See *Stanbury v. State,* 299 Ga. 125, 128 (1), n. 4 (786 SE2d 672) (2016).

identification of him is direct evidence of his guilt.[13] Therefore, the circumstantial evidence rule does not apply here.[14] Also, Detective Hood testified that, after seeing the photo lineup on the computer, Clark identified the Appellant. Further, the Appellant admitted to possessing Clark's cell phone, and Hicks testified that he robbed two women at an Applebee's restaurant using a silver gun.

Although the Appellant argues, inter alia, that Clark did not possess "an independent recollection" of him, a "jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it."[15] We conclude that the evidence presented was sufficient for a

---

[13] See *Lane v. State,* 255 Ga. App. 274, 276 (564 SE2d 857) (2002) (A defendant's presumption that the only evidence presented at trial was circumstantial "fails in light of the direct evidence of the victim identifying him[.]"); *Banks v. State,* 269 Ga. App. 653, 654 (1) (605 SE2d 47) (2004).

[14] See *State v. Canup,* 300 Ga. App. 678, 682 (2), n. 3 (686 SE2d 275) (2009) (Circumstantial evidence rule only applies when the evidence is entirely circumstantial.).

[15] *Bray v. State,* 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008) (citation and punctuation omitted).

rational trier of fact to find the Appellant guilty of the armed robberies beyond a reasonable doubt.[16]

3. The Appellant contends that he received ineffective assistance of counsel because his trial counsel failed to object or ask for a mistrial after Hicks testified and did not seek a motion in limine to limit Detective Hood's testimony. We disagree.

Generally, to prevail on a claim of ineffective assistance,

a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*[.[17]] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[18]

---

[16] See *Wickerson v. State,* 321 Ga. App. 844, 849-850 (1) (743 SE2d 509) (2013) (aimed robbery conviction upheld even though the victim was unable to identify the defendant as one of the armed robbers).

[17] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[18] *Robinson v. State,* 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

Both prongs of the *Strickland* test need not be proven if the defendant fails to prove either one.[19]

(a) The Appellant contends that his trial counsel was ineffective in failing to object or request a mistrial regarding the bad character evidence testified to by Hicks. Specifically, the Appellant argues that Hicks' testimony that he had committed a different armed robbery of two women and that he stole from Hicks was highly prejudicial.

During the motion for new trial hearing, trial counsel testified that she did not recall why she did not object or request a mistrial following Hicks' testimony. Yet, during cross-examination, trial counsel admitted that her theory of the case was to show that the Appellant's relationship with Hicks was "a drama-filled mess," and that Hicks' testimony was unreliable because she did not like the Appellant. In fact, during closing arguments, trial counsel discussed the inconsistencies in the testimony of Hicks, characterized her "story" as "crazy[,]" and discussed in detail Hicks' dislike of the Appellant.

---

[19] *Lajara v. State,* 263 Ga. 438, 440 (3) (435 SE2d 600) (1993) ("Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.").

The trial court found that the Appellant's trial counsel "did not perform deficiently when she chose not to object to certain testimony by [Hicks] concerning [the Appellant's] character." In addition, the trial court noted that the trial counsel's "theory of the case focused intently on discrediting [Hicks] as someone strongly biased against [the Appellant], to the point where [Hicks set him] up to be arrested, and [evidence of Hicks'] feelings toward [the Appellant] was elicited during trial counsel's cross-examination." "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[20] Thus, under the circumstances, the trial court did not err in finding that the Appellant's trial counsel's representation was not deficient and did not constitute ineffective assistance.

(b) The Appellant also argues that his trial counsel was ineffective in failing to move in limine to prevent Detective Hood from providing opinion testimony regarding Paige's appearance while she was looking at the photo lineup. Specifically,

---

[20] *Grier v. State,* 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citation and punctuation omitted). Cf. *Benham v. State,* 277 Ga. 516, 517-518 (591 SE2d 824) (2004) (Defense trial counsel's decision in an aggravated assault trial to focus on self defense and not request a jury charge on the defense of habitation was an unreasonable one "no competent attorney would have made under the same circumstances.").

the Appellant contends that the Detective's testimony improperly bolstered the credibility of Clark's identification of him as the robber.[21]

The record shows that the Appellant's trial counsel objected to Detective Hood's testimony that Paige, while looking at the photo lineup, appeared to "focus" on photo No. 2, identified as the Appellant. Specifically, the testimony at issue is as follows:

> Q (by the State): Now you talked about [Paige] looking at the lineups, and you said she focused on someone -
> Detective Hood: Yes.
> Q: - Was that when she was looking at the color lineup, or did she ever look at the black and white?
> Detective Hood: The color lineup.
> Q: Tell me what you mean by focus. What does that mean?
> Detective Hood: Well, while looking at the lineup, I was standing away from [Paige]. And she basically looked - well, she kind of indicated, well, he kind of looks like -
> Defense Counsel: I object to speculation.
> Detective Hood: - Number 2, but she never said that she was 100 percent sure.

---

[21] *Hill v. State,* 290 Ga. App. 140, 146 (5) (g) (658 SE2d 863) (2008) (Generally improper bolstering "refers to character evidence intended to show a witness's veracity, [her] tendency to tell the truth.") (citation and punctuation omitted).

The trial court sustained the objection, then ruled that Detective Hood could "describe, . . . how [Paige] appeared physically." Following the trial court's ruling, the testimony continued:

Q (by the State): Without saying what she said, would you have been able to tell she was focusing on someone, if she didn't say anything -
Detective Hood: Yes.
Q: - And how were you able to do that?
Detective Hood: Well, the computer screen is in front of her, so she is really looking at it and using her hand at the same time and looking at number 2 - pointing towards number 2.
Q: Okay. But she wasn't able to -
Detective Hood: She wasn't 100 percent sure, so she did not identify anybody.

During the motion for new trial hearing, the Appellant's trial counsel testified that she did not move in limine to exclude the Detective's testimony about the lineups because she "wanted the jury to know that [Paige] didn't pick [the Appellant] out of the lineup."[22] Detective Hood's characterization of Paige's behavior during the photo lineup was unanticipated.[23] The trial court found that trial counsel was not deficient

[22] *Smith v. State,* 296 Ga. App. 427, 430 (2) (674 SE2d 643) (2009) ("[A] reasonable tactic that backfires does not necessarily constitute deficient performance.") (footnote omitted).

[23] See *Browne v. State,* 261 Ga. App. 648, 649 (2) (583 SE2d 496) (2003) (no ineffective assistance where trial counsel was surprised by the testimony of a witness

in failing to file a motion in limine restricting the Detective's testimony, stating that trial counsel "could not have anticipated every statement which Detective Hood would make, and choosing not to file a motion in limine prohibiting testimony about the behavior of a witness who failed to identify [the Appellant] does not fall outside the range of competent or professional counsel."

We conclude that given the totality of the circumstances presented showing that the Appellant was the perpetrator of the crimes, there is no reasonable probability that the outcome of the trial would have been different if the jurors had not heard the testimony at issue.[24] Therefore, the Appellant has failed to show the prejudice necessary to prevail on this ineffective assistance claim.

4. The Appellant alleges that the trial court erred in failing to give an appropriate curative instruction to the jury regarding the bad character evidence

who changed his story at trial.)

[24] See *Robinson,* 277 Ga. at 75-76; see also *Riggins v. State,* 279 Ga. 407, 409 (2) (614 SE2d 70) (2005) (both deficient performance and prejudice must be shown to prevail on ineffective assistance claims).

15

presented by Hicks. This issue was not raised in the trial court and was, therefore, waived.[25]

*Judgment affirmed. Barnes, P. J, and McMillian, J., concur.*

---

[25] See *Williams v. State,* 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection, even of a constitutional magnitude, which were not raised and determined in the trial court.") (footnote omitted).