**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 17, 2019**

# In the Court of Appeals of Georgia

A18A2134. ANTHONY v. THE STATE.

REESE, Judge.

A Fulton County jury found Jasper Anthony guilty of armed robbery,[1] and found him not guilty of aggravated assault[2] and possession of a firearm during the commission of a felony.[3] The trial court sentenced him to serve 20 years in confinement. Following the denial of his motion for a new trial, he files this appeal, arguing that he was denied the effective assistance of counsel, that there was insufficient evidence to support his conviction, and that the trial court erred in failing to replace one of the jurors during trial. For the reasons set forth, infra, we affirm.

---

[1] See OCGA § 16-8-41 (a).

[2] See OCGA § 16-5-21 (a) (1), (2).

[3] See OCGA § 16-11-106 (b) (1).

Viewed in the light most favorable to the jury's verdict,[4] the record shows the following. On November 7, 2013, at approximately 8:00 p.m., Aaron Poisson ate dinner with his girlfriend and another friend, Hunter Geiss, at a Benihana restaurant in downtown Atlanta. After they finished eating, Poisson argued with his girlfriend outside the restaurant, and he walked about a block away. Three black men approached Poisson and told him to give them his wallet. Poisson refused, and one of the men said, "give me your wallet." Poisson refused again and, as he started to walk away, the men stepped in front of him and one of them put a gun to his head. The gunman ordered him to give them his wallet. After Poisson gave his wallet to the man with the gun, the two men standing behind the gunman said "make him empty all his pockets, get everything that he has." Poisson gave the men everything in his pockets, and the three men ran away.

As the men ran away, Poisson ran to Geiss and told him "hey, I just got robbed at gunpoint." Poisson and Geiss saw the three men and began chasing after them. After chasing them for a couple of blocks, Poisson and Geiss saw the men at the top of an escalator in a Metropolitan Atlanta Rapid Transit Authority ("MARTA")

---

[4] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

station. Poisson yelled at two officers, later identified as MARTA Officers Chase and Johnson, who were traveling down another escalator in the same MARTA station and asked the officers to stop the three men because "they just stole [his] wallet and [his] phone." Officer Chase testified that, other than the three men, there was no one else on that escalator. While pursuing the three men, Officer Chase radioed a MARTA Lieutenant officer ("Lieutenant"), who was a block away in her patrol car, to stop the three men.

Upon receiving the radio call from Officer Chase, the Lieutenant drove to the MARTA station where she saw three black men "walking very quickly" out of the MARTA station. The Lieutenant drew her gun and ordered the three men to "get on the ground." One of the men, later identified as S. N., a juvenile, dropped to the ground while the other two men attempted to flee. As the Lieutenant handcuffed S. N., Poisson and Geiss ran up to her and identified S. N. as one of the robbers. The Lieutenant searched S. N. at the scene and found two cell phones and $40 in his pocket.

Officer Chase pursued and detained one of the other men, whom she identified at trial as the Appellant. At the time he was detained, the Appellant did not have any money or possessions of Poisson on his person.

3

Poisson, Geiss, and a police officer searched the area around the MARTA station for the third robber, later identified as Jay Twilly. Although they walked around the area for about 30 minutes, they were unable to find Twilly. Poisson testified at trial that the officers returned his cell phone after two of the robbers were caught, but his wallet which contained his social security card and cash were never recovered.

Poisson identified the Appellant at trial as one of the men who robbed him. Geiss also identified the Appellant at trial as one of the men he had chased with Poisson and as one of the men detained by the officers near the MARTA station.

The State called S. N. as a witness at trial, and S. N. testified that he had pled guilty to the November 7, 2013 armed robbery of Poisson. S. N. testified that he had recently met the Appellant in his neighborhood, and that, on November 7, 2013, he met the Appellant by the Benihana restaurant in downtown Atlanta. At the time of the meeting, the Appellant was with Twilly, someone S. N. did not know.

According to S. N., Twilly approached Poisson by the restaurant, pointed a handgun at Poisson, and robbed him of his cell phone and his wallet. Twilly gave the wallet to the Appellant, and the Appellant searched it. S. N. testified that Twilly gave Poisson's cell phone and money to him "[b]y force[,]" and S. N. put the items in his

4

pocket. Twilly, S. N., and the Appellant walked away, and Twilly realized that Poisson followed them. Poisson followed the three men into a MARTA station. Law enforcement officers detained S. N. while he was leaving the MARTA station, at which time the officers found items belonging to Poisson in S. N.'s pocket. At trial, S. N. denied that he and the Appellant participated in the robbery.

After a jury found him guilty of armed robbery, the Appellant filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

Generally, on appeal from a criminal conviction, the appellate court

view[s] the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The reviewing court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[5] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the reviewing court] must uphold the jury's verdict.[6]

---

[5] 443 U. S. at 319 (III) (B).

[6] *Rankin*, 278 Ga. at 705 (additional citations omitted).

"The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes charged."[7] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the evidence was insufficient for a rational trier of fact to find him guilty of armed robbery. Specifically, the Appellant contends that S. N.'s "accomplice testimony" was uncorroborated and, therefore, the State failed to establish that the Appellant was a party to the armed robbery. We disagree.

An individual commits armed robbery "when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[8] Also, pursuant to OCGA § 24-14-8, "the testimony of a single witness is generally sufficient to establish a fact. A defendant may not be convicted on the uncorroborated testimony of an accomplice. The corroboration must

---

[7] *Donnell v. State*, 285 Ga. App. 135 (1) (645 SE2d 614) (2007) (citation omitted).

[8] OCGA § 16-8-41 (a).

be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he [ ] is guilty."[9]

Here, Poisson testified that the Appellant was with the gunman and another man when all three men approached him and said "to give them [his] wallet." Poisson also averred that the Appellant and S. N. stood directly behind the gunman and told the gunman to make Poisson empty his pockets and "get everything that he has." Despite S. N.'s testimony that the Appellant did not participate in the robbery of Poisson, a "jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it."[10] We conclude that the evidence presented was sufficient for a rational trier of fact to find the Appellant guilty of the armed robbery beyond a reasonable doubt.[11]

---

[9] *Porter v. State*, 341 Ga. App. 632, 635 (1) (802 S.E.2d 259) (2017) (punctuation and footnote omitted).

[10] *Patterson v. State*, 346 Ga. App. 530, 534 (2) (816 SE2d 461) (2018) (punctuation and footnote omitted).

[11] See *Threatt v. State*, 293 Ga. 549, 551 (1) (748 SE2d 400) (2013) ("[S]ufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty.") (citations and punctuation omitted); see also *Daniels v. State*, 339 Ga. App. 837, 839-840 (795 SE2d 94) (2016) (corroboration of every detail of an accomplice's testimony is not

2. The Appellant argues that the trial court erred in failing to remove one of the jurors after learning that the juror knew one of the State's witnesses. We disagree.

[A] defendant has the right to trial by a fair and impartial jury, and in pursuit of that end is entitled to exercise knowledgeable challenges; however, an incorrect response given by a potential juror on voir dire does not necessarily call for a new trial. The determinative question is whether there exists bias on the part of the juror which results in prejudice to the defendant. If the prospective juror's response was given in good faith without the deliberate intent to mislead, the trial court may well find that no prejudice resulted, even in the situation in which the lack of disclosure might have impaired the defendant's right to knowledgeably exercise a peremptory challenge. The question of juror impartiality is one of both law and fact, and a trial court's findings on the question will be set aside only where manifest prejudice to the defendant has been shown. Indeed, in order for a defendant to be entitled to a new trial because of voir dire examination, the defendant has to show both that the juror failed to answer honestly a material question, and that a correct response would have provided a valid basis for a challenge for cause.[12]

---

required to uphold a conviction.).

[12] *Green v. State*, 295 Ga. 108, 111 (2) (757 SE2d 856) (2014) (citations omitted).

During the trial, the prosecutor notified the trial court judge that he had just learned that the juror knew Officer Johnson. The Appellant's trial counsel expressed concern about the fact that the juror did not raise his hand during voir dire when asked if he knew any of the witnesses, and suggested that the juror should be questioned if he knew Officer Johnson other than from just seeing him on MARTA. Shortly thereafter, the trial court questioned the juror:

> [COURT]: [D]id you know one of the police officers, Officer Johnson?
> [JUROR]: Yeah. Officer Johnson.
> [COURT]: How - - What's your relationship with Mr. Johnson?
> [JUROR]: We have mutual friends. A mutual friend.
> [COURT]: Do you see him regularly?
> [JUROR]: Oh, no. We get together through a mutual friend at a mutual friend's home. Nobody that I would conversate [sic] on the telephone with.
> [COURT]: All right. When we were going through the voir dire process[,] defense counsel, or the State's counsel, perhaps, went down a list of potential witnesses and probably said Officer Johnson with [MARTA]. Did it just not register to you at that point that you might know an Officer Johnson?
> [JUROR]: To be honest with you, I really didn't know he was a police officer.
> [COURT]: Oh, really?
> [JUROR]: Right.

[COURT]: All right. Is the fact that you do have this acquaintance with this witness, would that change your ability to be fair and impartial in this case in any way?

[JUROR]: No.

[COURT]: Would you pay any special attention to his testimony because you know him?

[JUROR]: Well, it would have nothing to do with it, as far as I'm concerned.

[COURT]: Okay. Thank you very much.

The trial court judge ruled that, "[i]n light of the juror's answers, and also in light of Mr. Johnson's testimony, which is certainly cumulative of all the other testimony, I'm not going to excuse the juror." In denying the motion for new trial, the trial court found that "[t]he evidence of record [did] not demonstrate either [the juror's] preconception of [the Appellant's] innocence or guilt or of any bias toward [the Appellant]." In addition, the trial court, found that "Officer Johnson's participation in the arrest was marginal and his testimony at trial was scarcely crucial."

Generally, "[a] juror's knowledge of, or non-familial relationship with, a witness, attorney, or party provides a basis for disqualification only if it is shown that it has resulted in the juror having a *fixed opinion* of the accused's guilt or innocence

10

or a bias for or against the accused."[13] Here the record shows that the juror did not demonstrate a preconception of guilt, innocence, or bias toward the Appellant. Based on the foregoing, the Appellant has not shown that manifest prejudice resulted from the trial court's denial of his motion for new trial on this ground.[14]

3. The Appellant contends that he received ineffective assistance of counsel because his trial counsel failed to challenge the juror's ability to be impartial and/or failed to request an opportunity to re-examine the juror. We disagree.

Generally, to prevail on a claim of ineffective assistance,

a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[15] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and

---

[13] *Green*, 295 Ga. at 112 (2) (citation and punctuation omitted; emphasis supplied).

[14] See id.

[15] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[16]

Both prongs of the *Strickland* test need not be proven if the defendant fails to prove either one.[17] To meet the burden of proving trial counsel's deficient performance and resulting prejudice, "the defendant must present competent evidence, which usually means that the attorney at issue must be called to testify and defend against an assertion that his performance had been deficient."[18] The failure of the defendant to call his trial counsel to testify at the hearing on the motion for new trial in order to explain his actions or inactions during trial presents an extremely difficult

---

[16] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[17] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993) ("Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.") (citing *Strickland*, 466 U. S. at 697).

[18] *Delevan v. State*, 345 Ga. App. 46, 49-50 (1) (811 SE2d 71) (2018) (footnotes omitted); see *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005) (Defendant alleged he received ineffective assistance of counsel yet did not call his trial counsel to testify at the hearing on motion for new trial. On appeal, the defendant was required to "rebut by clear and convincing evidence the strong presumption that his attorney was effective. However, . . . without such testimony, it is extremely difficult to overcome this presumption.") (citations and punctuation omitted).

12

presumption to overcome.[19] "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[20]

In his appeal, the Appellant argues that his trial counsel's failure to object or attempt to re-examine the juror amounted to ineffective assistance of counsel. The record shows that the Appellant's trial counsel asked the trial court to excuse the juror if Officer Johnson and the juror "actually [knew] each other[.]"

Pretermitting whether these requests by trial counsel were sufficient to preserve any error, we concluded in Division 2, supra, that the trial court was authorized to allow the juror to remain on the panel under the circumstances presented.

---

[19] See *Jones*, 279 Ga. at 855 (2); see also *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002) (When his trial counsel did not testify at the motion for new trial hearing, the defendant failed to affirmatively show that the purported deficiencies in his trial counsel's representation "were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy.") (citation omitted).

[20] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citation and punctuation omitted).

Consequently, the Appellant's trial counsel cannot be deemed ineffective for failing to object to this decision.[21]

We conclude that the Appellant has not shown there is reasonable likelihood that the outcome of the trial would have been different if trial counsel had objected or conducted further voir dire of the juror. Therefore, trial counsel's representation did not constitute ineffective assistance.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*

---

[21] See *Bester v. State*, 294 Ga. 195, 196-197 (2) (a), (b) (751 SE2d 360) (2013) (failure to make a motion that the trial court was authorized to deny does not establish ineffective assistance of counsel); see also *McCoy v. State*, 285 Ga. App. 246, 249 (4) (645 SE2d 728) (2007) ("[F]ailure to make a meritless argument does not constitute ineffective assistance of counsel.") (footnote omitted).